MJL:LTG
F# 2007R01344

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

08-1055M

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

-against-

MICHAEL ROMANO,
WILLIAM KEARNEY,
    also known as "Ed Thompson,"
MICHAEL SCOTT SCHUTZMAN,
    also known as "Mike Scott"

       and

THE PREMISES KNOWN AND DESCRIBED
AS "NORTHEAST GOLD AND SILVER,"
654 WEST MONTAUK HIGHWAY,
LINDENHURST, NEW YORK, A ONE STORY
BUILDING ON THE NORTH SIDE OF
MONTAUK HIGHWAY BETWEEN SOUTH 14TH
STREET AND SOUTH 15TH STREET,

       Defendants.

- - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST AND
SEARCH WARRANTS

(T. 18 U.S.C. § 1349)

EASTERN DISTRICT OF NEW YORK, SS.:

      WILLIAM J. HESSLE, being duly sworn, deposes and says

that he is a Postal Inspector with the United States Postal

Inspection Service ("USPIS"), duly appointed according to law and

acting as such. Upon information and belief, there is probable

cause to believe that there is presently being kept and concealed

within THE PREMISES KNOWN AND DESCRIBED AS NORTHEAST GOLD AND

SILVER, 654 WEST MONTAUK HIGHWAY, LINDENHURST, NEW YORK, A ONE

1

STORY BUILDING ON THE NORTH SIDE OF MONTAUK HIGHWAY BETWEEN SOUTH 14TH STREET AND SOUTH 15TH STREET  (the "SUBJECT PREMISES"), certain property, to wit: (1) books and records, including but not limited to, mailing lists, customer lists, mailing and shipping records, mailing devices, personnel records, credit card slips, credit card purchase authorization devices, coin valuation reference manuals, cancelled envelopes, pitch sheets, lead sheets, correspondence and inventory records; (2) financial records, including but not limited to, bank statements, checks, deposit and withdrawal slips, invoices, payroll records, receipts, billing records and telephone records; (3) coin cleaning chemicals; (4) computers and related equipment, including but not limited to, computer hard drives, computer software, disks and cd roms; (5) coins and (6) certain property, to wit: mail directed to NORTHEAST GOLD AND SILVER, MICHAEL ROMANO and EDWARD KEARNEY, all of which property constitutes evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1349.

In or about and between September 2000 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL ROMANO, WILLIAM KEARNEY, also known as "Ed Thompson" and MICHAEL SCOTT SCHUTZMAN, also known as "Mike Scott," together with others did knowingly and willfully conspire to devise a scheme and

2

artifice to defraud coin purchasers, and to obtain money and property from coin purchasers by means of materially false and willfully and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, placed and caused to be placed in post offices and authorized depositories for mail matters and things and deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers to wit: checks, invoices and coins to be sent and delivered by the United States Postal Service and commercial interstate carriers according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349).

The source of your deponent's information and grounds for his belief are as follows:[1]

1.   I have been a Postal Inspector with the USPIS for approximately 23 years and have participated in numerous investigations of violations of federal offenses committed using the United States mail and interstate carriers. I am currently assigned to the Mail Fraud Unit of the Hicksville office of the USPIS.

---

[1] Because the purpose of this complaint and affidavit is to state only probable cause to arrest and search the SUBJECT PREMISES, I have not described all the relevant facts and circumstances of which I am aware.

## Introducton

2.    In or about September 2007, based upon information obtained from consumer complainants, I became involved in an investigation of fraudulent activity using the U.S. Mail and private interstate carriers.  The activity involved a business operating in a manner consistent with what is commonly referred to as a "boiler room" sales operation.  As it relates to this investigation, this boiler room sales operation engaged in and continues to engage in a scheme to defraud by the sale of coins at highly inflated prices by means of false and fraudulent representations regarding the grade and value of the coins purchased.  During the course of the investigation, I and other investigators assigned to the USPIS have interviewed approximately 10 victims who have purchased coins from defendants MICHAEL ROMANO, WILLIAM KEARNEY, also known as "Ed Thompson" and MICHAEL SCOTT SCHUTZMAN, also known as "Mike Scott."  I have also reviewed a voluminous amount of documentary evidence including bank records, telephone records and corporate records and interviewed numerous non-victim witnesses.

## The Defendants, Co-Conspirators and Companies

3.    Wall Street Rare Coins, Inc. ("WALL STREET RARE COINS") was a New York State Corporation that engaged in the sale of coins from March 1997 until October 2004 and was located at 12 Unqua Road, Massapequa, New York.

4

4.   Atlantic Coin Galleries, Inc. ("ATLANTIC COIN") was a New York State Corporation that engaged in the sale of coins from October 2004 until August 2008 and was located at 183 South Wellwood Ave, Lindenhurst, New York.

5.   Northeast Gold and Silver, Inc. ("NORTHEAST GOLD AND SILVER") was a New York State Corporation that engaged in the sale of coins from September 2008 until the present and is located at the SUBJECT PREMISES.

6.   The defendant MICHAEL ROMANO was the owner of WALL STREET RARE COINS, ATLANTIC COIN and NORTHEAST GOLD AND SILVER (collectively the "SUBJECT COMPANIES").

7.   The defendant WILLIAM KEARNEY, also known as "Ed Thompson" was a salesperson and manager for the SUBJECT COMPANIES.

8.   The defendant MICHAEL SCOTT SCHUTZMAN, also known as "Mike Scott," was a salesman for the SUBJECT COMPANIES.

**Terminology Related to Coins**

9.   A "roll" of Benjamin Franklin half-dollars contained 20 coins of the same year and mint.

10.   A "complete roll set" of Benjamin Franklin half-dollars was a roll of each variety of the coin minted from 1948 to 1963.

11.   Mint State ("MS") is a numerical grade indicating the degree of perfection of the condition of an uncirculated

coin, ranging from 70 for a coin perfect in condition to 60 for a coin which has small scratches or other imperfections.  Thus, the higher the MS grading of a coin, the rarer the coin.

**The Scheme to Defraud**

12.  Beginning in September 2000 and continuing to the present, within the Eastern District of New York and elsewhere, the defendants MICHAEL ROMANO, WILLIAM KEARNEY also known as "Ed Thompson" and MICHAEL SCOTT SCHUTZMAN also known as "Mike Scott," (collectively the "DEFENDANTS") together with others, did knowingly and willfully conspire to devise a scheme and artifice to defraud coin purchasers, and to obtain money and property from coin purchasers by means of materially false and fraudulent pretenses, representations and promises involving the offer and sale of coins.

13.  To execute the scheme to defraud, the DEFENDANTS either personally telephoned potential coin purchasers or instructed employees under their supervision to telephone potential coin purchasers and, during "sales pitches" (which differed from victim to victim), offered coins for sale. According to the victims, during these "sales pitches" the DEFENDANTS misrepresented the value of the coins sold by over-grading the condition of the coins.  Based upon the misrepresentations, victims purchased the over-graded coins and the DEFENDANTS arranged for Federal Express to pick up the

6

payment checks from the victims.  Once a victim's check was
deposited, the coins were shipped to the victims by U.S. Mail or
Federal Express.  Subsequent investigation revealed that many of
the rolls of coins contained coins of mixed grades often below
the grade stated by the DEFENDANTS.  Many victims have determined
the true grade and value of their coins through local coin
dealers and have realized that their collections were worth only
about 10% to 20% of what they paid.

14.   It was a further part of the scheme to defraud
that the DEFENDANTS sold the victims "washed" coins or coins that
were scrubbed and/or cleaned with chemicals, a practice that,
according to the American Numismatic Association (the "ANA"), a
national trade organization for coin collectors, drastically
decreases the value of a coin.

**Confidential Source**

15.   In August 2008, I interviewed a confidential
source (CS) who advised that, from 1999 until 2003, s/he worked
at WALL STREET RARE COINS for defendant MICHAEL ROMANO, whom the
CS described as the owner of the company.  The CS described WALL
STREET RARE COINS as a telemarketing business that employed
salesmen who sold over-graded coins to unsuspecting customers.
The CS further advised that defendant ROMANO was regularly
present at WALL STREET RARE COINS and was the sole purchaser of
the wholesale coins that the business thereafter sold to coin

purchasers.  The CS described defendant WILLIAM KEARNEY, whom the CS indicated used the alias "Ed Thompson," as a salesman for and the manager of WALL STREET RARE COINS.  The CS advised that defendant KEARNEY admitted to CS that KEARNEY was selling over-graded coins to customers and that KEARNEY'S clients would never realize a profit from the resale of the coins purchased from KEARNEY.  The CS also advised that, when customers complained about the coins purchased from WALL STREET RARE COINS being over-graded or their value misrepresented, defendant ROMANO would offer to purchase the coins from the customer at approximately 30% of the purchase price.

16.  CS specifically recalled a customer of WALL STREET RARE COINS, Jane Doe #1 ("JD #1"), an individual whose identity is known to the U. S. Attorney's office.  CS recalled defendant KEARNEY referring to JD #1 as a "whale," which was a term used to describe a customer from whom a lot of money was taken.  The CS further recalls defendant KEARNEY bragging that he sold JD #1 hundreds of thousands of dollars of over-graded coins.  Finally, CS recalls overhearing a conversation between defendant ROMANO and defendant KEARNEY about JD #1 during which ROMANO advised KEARNEY to slow down the pace of coin sales to JD #1 as defendant ROMANO feared that JD #1 would hire a lawyer to sue WALL STREET RARE COINS.

17.  On May 10, 2007, the defendant MICHAEL ROMANO

8

admitted under oath at a deposition in a civil law suit that he was the owner of ATLANTIC COIN.  Defendant ROMANO further testified that defendant MICHAEL SCOTT SCHUTZMAN worked as a salesman for ATLANTIC COIN and used the alias "Mike Scott" when speaking with customers.

The Victims

### Jane Doe #1

18.  JD #1 advised that she received a solicitation in the mail in late 1999 or early 2000 from WALL STREET RARE COINS which advertised the sale of coins.  Thereafter, JD #1 contacted WALL STREET RARE COINS and began to purchase coins.  Defendant KEARNEY, at various times, spoke with JD #1, identified himself as the vice-president of WALL STREET RARE COINS, and sold JD #1 Benjamin Franklin half-dollars and other coins which defendant KEARNEY claimed were a good investment and would increase in value over time.  During the telephone calls, defendant KEARNEY represented that the coins for sale were graded at various MS levels which was verified by the three "coin graders" who defendant KEARNEY indicated worked for WALL STREET RARE COINS. JD #1 paid for the coins by check, which she sent to WALL STREET RARE COINS via Federal Express or U.S. Mail.  The coins and invoices stating the grade of each coin were shipped to JD #1 via Federal Express or U.S. Mail.  Between September 2000 and April 2003, JD #1 paid approximately $478,622 for coins purchased from

WALL STREET RARE COINS. In September 2003, JD #1 attempted to sell her coins to a local dealer. The dealer appraised JD #1's coin collection at $52,691 and advised JD #1 that the claimed MS grades for the majority of the coins were over-graded. Additionally, the appraiser advised JD #1 that many of the coins were cleaned and/or brushed. JD #1 thereafter contacted WALL STREET RARE COINS and spoke with defendant ROMANO, who identified himself as the owner of WALL STREET RARE COINS. JD #1 confronted defendant ROMANO about the condition of the coins that she was sold and demanded a refund. The defendant ROMANO, however, refused to refund JD #1 her money.

<u>Jane Doe #2</u>

19. Jane Doe #2 ("JD #2"), an individual whose identity is known to the U.S. Attorney's Office, received a telephone call in January 2005 from defendant MICHAEL SCOTT SCHUTZMAN, identifying himself as a representative of ATLANTIC COIN. Defendant SCHUTZMAN offered to sell JD #2 rolls of Benjamin Franklin half-dollars and, during further telephone calls, at various times, told JD #2 that the coins were a good investment and would increase in value over time. Defendant SCHUTZMAN also advised JD #2 that, once she purchased enough coins to "complete the collection," her coin collection could be sold at a substantial profit. Thereafter, over the course of many months, JD #2 purchased over 700 coins in an attempt to

"complete the collection."   JD #2 paid for the coins by check
which she sent to ATLANTIC COIN via Federal Express.   Thereafter,
the coins, and invoices stating the grade of each coin, were
shipped to JD #2 via Federal Express.   Between January 2005 and
September 2006, JD #2 paid approximately $227,533 for coins
purchased from ATLANTIC COINS.   In December 2006, JD #2 had her
coin collection appraised at a local dealer.   The dealer
appraised JD #2's coin collection at $22,874 and advised JD #2
that the claimed MS grades for the majority of the coins were
over-graded.   Additionally, the appraiser advised JD #2 that some
of the coins were cleaned and/or brushed.

### John Doe #3

20.   John Doe #3 ("JD #3"), an individual whose
identity is known to the U.S. Attorney's Office, received a
telephone call in July 2008 from an individual identifying
himself as a representative of NORTHEAST GOLD AND SILVER whose
name was "Nick".   "Nick" offered to sell JD #3 various gold coins
and, during further telephone calls at various times, told JD #3
that the coins were a good investment and would increase in value
over time.   Thereafter, over the next few months, JD #3 purchased
9 gold coins.   JD #3 paid for the coins by check which he sent to
NORTHEAST GOLD AND SILVER via Federal Express.   Thereafter, the
coins and invoices stating the grade of each coin were shipped to
JD #3 via Federal Express.   Between July 2008 and August 2008, JD

#3 paid approximately $58,650 for the 9 gold coins purchased from NORTHEAST GOLD AND SILVER.  In October 2008, JD #3 had the 9 gold coins purchased from NORTHEAST GOLD AND SILVER appraised at a local dealer.  The dealer appraised JD #3's 9 gold coins at $6,576.  The appraiser further advised that the prices paid by JD #3 for the gold coins "were criminal."

**The Fraud Proceeds**

21.  Bank records indicate that, between September 1, 2000 and August 28, 2008, in excess of $33 million was deposited into the accounts of the SUBJECT COMPANIES.  Bank records also indicate that payments from the accounts of the SUBJECT COMPANIES were made as follows:

a.   $4,078,758 was paid to the defendant MICHAEL ROMANO between August 25, 2000 and August 29, 2008;

b.   $2,940,000 was paid to the defendant WILLIAM KEARNEY between September 1, 2000 and August 29, 2008; and

c.   $213,000 was paid to the defendant MICHAEL SCOTT SCHUTZMAN between August 27, 2004 and July 18, 2008.

**The Subject Premises**

22.  As of November 19, 2008, NORTHEAST GOLD AND SILVER continues to operate from inside of the SUBJECT PREMISES.  Surveillance has established that defendants ROMANO and KEARNEY were inside of the SUBJECT PREMISES as of November 19, 2008.  Moreover, the U.S. Postal Service confirmed that mail continues

to be delivered to the SUBJECT PREMISES as of November 19, 2008.
In addition, law enforcement officers have confirmed that, as of
November 19, 2008, defendant ROMANO is currently supervising nine
telemarketers who are selling coins from the SUBJECT PREMISES.

23.   Based upon my training and experience as a Postal
Inspector who has executed numerous search warrants over the past
twenty-three years in connection with fraud cases such as this, I
believe that inside of the SUBJECT PREMISES certain property will
be found, to wit:(1) books and records, including but not limited
to, mailing lists, customer lists, commission binders, mailing
and shipping records, mailing devices, personnel records, credit
card slips, credit card purchase authorization devices, coin
valuation reference manuals, cancelled envelopes, pitch sheets,
lead sheets, correspondence and inventory records; (2) financial
records, including but not limited to, bank statements, checks,
deposit and withdrawal slips, invoices, payroll records,
receipts, billing records and telephone records; (3) safes, key-
lock strong boxes, suitcases, locked cabinets, concealed storage
departments, and other types of locked, closed, and/or hidden
containers that may be used to store and secrete United States
currency, books, records, documents, financial instruments, and
other items of the sort to prevent the discovery of theft of such
items; (4) coin cleaning chemicals and bushes; (5) computers and
related equipment, including but not limited to, computer hard

drives, computer software, disks and cd roms; (6) coins; and (7) certain property, to wit: mail directed to NORTHEAST GOLD AND SILVER, JOSEPH ROMANO and WILLIAM KEARNEY, all of which property constitutes evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1349.

24. Based upon my training and experience as a Postal Inspector who has executed numerous search warrants over the past twenty-three years, I know that the above-listed records can also be created and/or stored within a computer or other form of electronic media, and that searching and seizing this information from a computer or other media devices, often requires agents to seize most or all of the electronic storage devices (along with related peripherals), so that these items can be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because:

a. Computer storage devices (such as hard disks, DVD's, CD-ROMs, floppy disks, tapes, compact disks, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take weeks or months, depending on the volume of data stored and it would be impractical to attempt this kind

of data search on-site.

      b.   Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system), the controlled environment of a laboratory is essential to complete an accurate analysis.

      WHEREFORE, your deponent respectfully requests that a search warrant be issued authorizing any officer of the Postal Inspection Service, with appropriate assistance, to enter the premises known and described as NORTHEAST GOLD AND SILVER, 654 WEST MONTAUK HIGHWAY, LINDENHURST, NEW YORK, A ONE STORY BUILDING ON THE NORTH SIDE OF MONTAUK HIGHWAY BETWEEN SOUTH 14TH STREET AND SOUTH 15TH STREET, and therein to search for and seize (1) books and records, including but not limited to, mailing lists, customer lists, commission binders, mailing and shipping

records, mailing devices, personnel records, credit card slips, credit card purchase authorization devices, coin valuation reference manuals, cancelled envelopes, pitch sheets, lead sheets, correspondence and inventory records; (2) financial records, including but not limited to, bank statements, checks, deposit and withdrawal slips, invoices, payroll records, receipts, billing records and telephone records; (3) safes, key-lock strong boxes, suitcases, locked cabinets, concealed storage departments, and other types of locked, closed, and/or hidden containers that may be used to store and secrete United States currency, books, records, documents, financial instruments, and other items of the sort to prevent the discovery of theft of such items; (4) coin cleaning chemicals and brushes; (5) computers and related equipment, including but not limited to, computer hard drives, computer software, disks and cd roms; (6) coins; and (7) certain property, to wit: mail directed to NORTHEAST GOLD AND SILVER, JOSEPH ROMANO and WILLIAM KEARNEY, all of which property constitutes evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1349.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the arrest of the defendants MICHAEL ROMANO, WILLIAM KEARNEY, also known as "Ed Thompson" and MICHAEL SCOTT SCHUTZMAN, also known as "Mike Scott,"

so that they may be dealt with according to law and that a search warrant be issued.

WILLIAM J. HESSLE
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
21st day of November, 2008

/s/ William D. Wall

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

        Because of the nature of this application, we further request that this application be sealed until further order of the Court.

WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

17