# EXHIBIT 2

DECLARATION

I am Jeanne Romano. I am 85 years old, having been born in Brooklyn in 1939. I have been widowed since 2014. I reside at 9 Lilac Lane, Levittown NY 11756, where I have lived for over 40 years.

1. I am the mother of Celia Wells and Joseph, Salvatore, Michael, and Vincent Romano. All of my children are adults.

2. I worked as a registered nurse until my retirement in 2012. For many years, I worked 12-hour shifts five days a week at Mid-Island Hospital in Bethpage (now St. Joseph's), and I held a second position on weekends at A. Holly Patterson Home for the Aged in Uniondale.

3. In about 2003, my husband, Joseph, and I decided that we would like to buy a property in Florida to use for vacation and eventual retirement. My son, Michael, offered to look for a suitable property for us, finding a location under construction at 8154 Via Bolzano, Lake Worth, Florida. I will refer to it as "the Property."

4. My husband and I agreed that it would be suitable, and Michael arranged its purchase to be in my name. I obtained title on April 16, 2003. To pay for the property, I borrowed $175,000 from Chase Manhattan Bank, giving that Bank a mortgage on the Property. The remainder of the purchase price came from my savings and from money I received from my mother, Odesilia Del'Erario.

Declaration of Jeanne Romano
March 12, 2025
Page 2 of 5 Pages

5.      After closing and while the Property was being built, Michael arranged a number of upgrades that he believed we would like and would enhance the value of the Property. He often did not consult with us prior to making changes in the Property. The biggest change he made was to have a swimming pool installed. The total cost of the upgrades was about $142,000 or $143,000.

6.      Michael was proud of the additions he had ordered, especially the pool. On the other hand, I was not happy at all with what he had done. My husband (Michael's father) was in ill health. He had undergone a laryngectomy, meaning that using a pool – where he could easily aspirate water through his stoma – was out of the question. I thought that Michael was being disrespectful to us by making changes without our permission and especially by installing something that his father would have to look at every day but be unable to enjoy.

7.      When I found out about the pool, it was the last straw. I told Michael not to make any other changes in the construction. I also told him that I would not accept his "gift" of the upgrades already ordered but instead would pay him back every dime he had put up.

8.      I repaid him the $143,000 over a two-year period while making extra payments on the Property's mortgage. I maintained written records of

Declaration of Jeanne Romano
March 12, 2025
Page 3 of 5 Pages

those repayments. Between the purchase of the Property and 2007, I also repaid the Chase loan on the subject property by paying extra principal on the loan.

9. Other than the $143,000 Michael advanced to pay for the upgrades—money I returned to him in full—he contributed nothing toward the payment for the Property. He was not a signer on the mortgage note, and he has never contributed a dime toward principal or interest payments, taxes, utilities, or any other expenses related to the Property.

10. I purchased the Property for my husband and me to use as a vacation home and ultimately as a retirement home. We never did either. I took a trip to Europe in 2006, during which I was hit by a car in Amsterdam. I spent a long time recuperating, but that made me think about what would happen when I was infirm and had to be in a home like A. Holly Patterson.

11. I rented out the Property to defray upkeep costs and so that someone would look after it. I have only had one tenant since renting it out, and that tenant, Walter Hazen, continues to be my tenant. I receive the rent by check every month and deposit it into my account. Michael has never been paid, directly or indirectly, any of the rent associated with the Property.

12. As I recuperated from my accident in Amsterdam (I was 68 years old at the time), I consulted Domenick Pelle, a longtime family friend and

Declaration of Jeanne Romano
March 12, 2025
Page 4 of 5 Pages

attorney. This was in May 2007. My daughter was present for the discussion. I wanted to divide up my assets among my children so as to limit the time and expense of probate, as well as federal and state estate taxes, and to plan for a time that my husband and I might incur long-term care expense. Upon Domenick's advice, I gave the title of one property to my son, Vincent, and the title of the Property to Michael. I had previously provided ample money to assist my daughter, Celia.

13. Domenick explained that these transfers would be in name only. My sons agreed that if I ever needed to sell these properties to a third party, that was a right I was reserving to myself. Domenick explained that the properties were being transferred into what he called a constructive trust, and because my children understood at the time of transfer that I reserved the right to ask for the properties back if I needed them, they would be legally obligated to do so.

14. The discussion with Domenick was consistent with conversations I had had with my children in which we discussed my paramount concern that these two properties might be needed to be sold for my support someday and that I would have to have them transferred back to me if I faced the need for such expenses.

Declaration of Jeanne Romano
March 12, 2025
Page 5 of 5 Pages

15.     Michael and Vincent understood that I maintained an equitable ownership in the properties. I transferred property to each of them – in Michael's case, the 8154 Via Bolzano property – for no consideration. I filed no gift tax return because I understood that the contingent nature of the conveyance made the transfer other than a gift.

16.     Since the transfer of the Property to Michael, have continued to pay for all upkeep and taxes. The homeowners' association statements are still in my name, and I continue to pay every bill associated with this property. The water and sewer taxes are sent to my address at 9 Lilac Lane, Levittown, an address at which Michael has never lived.

17.     When the government first claimed that it could take my house in Lake Worth, I provided all of my records on the matter to Attorney Maurice H. Sercarz of the law firm Sercarz & Riopelle, 810 Seventh Avenue, Suite 620, New York, NY 10019.  I kept a full copy for myself, but later I provided a copy to Attorney Richard Ware Levitt, Levitt & Kaiser, 40 Fulton Street, 17th Floor, New York 10038-5077. Those firms no longer retain the copies, including the records of my son Michael's repayment of the $143,000 to me. I am aware that the government seized my son's bank records that show his payments to me on the $143,000.

Declaration of Jeanne Romano
March 12, 2025
Page 6 of 5 Pages

18.   In every respect, I consider myself to be the owner of the Property.

Michael is merely the nominal owner for my benefit.

The statements of fact made herein are true, under penalty of perjury.

Executed March 12, 2025

Jeanne Romano
9 Lilac Lane
Levittown NY  11756