UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

CR 09-0168 (S-2)(DLI)

- against -

MICHAEL ROMANO and
WILLIAM KEARNEY

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION
## TO CLAIMANT JEAN ROMANO'S MOTION FOR SUMMARY JUDGMENT

JOHN J. DURHAM
UNITED STATES ATTORNEY
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Diane C. Leonardo
Assistant United States Attorney,
      Of counsel

Date of service: March 28, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT....................................................................................................................... 2

POINT I  CLAIMANT HAS NOT SET FORTH THE ELEMENTS OF A
CONSTRUCTIVE TRUST AND HER CLAIM FAILS FOR LACK OF STANDING................ 2

POINT II  CLAIMANT CANNOT ESTABLISH THAT SHE HAS A RIGHT IN THE
PROPERTY SUPERIOR TO THAT OF THE GOVERNMENT.................................................. 5

     A.     The Purchase of the Property................................................................. 5

     B.     Claimant's Attempt to Relitigate Defendant's Conviction is Misplaced................ 8

CONCLUSION.................................................................................................................... 9

i

## TABLE OF AUTHORITIES

### Federal Cases

United States v. Kalish,
  626 F.3d 165 (2d Cir. 2010) ................................................................................................ 9

United States v. Monaco,
  194 F.3d 381 (2d Cir. 1999) ............................................................................................ 8, 9

United States v. Mosca,
  No. 21-2109, 2023 U.S. App. LEXIS 27382 (2d Cir. October 16, 2023) ................................ 2

United States v. Ribadeneira,
  105 F.3d 833 (2d Cir. 2011) ................................................................................................ 5

United States v. Timley,
  507 F.3d 1125 (8th Cir. 2007) ......................................................................................... 5, 6

United States v. Valladares,
  544 F.3d 1257 (11th Cir. 2008) ........................................................................................... 9

Willis Mgmt. (Vermont), Ltd. v. United States,
  652 F.3d 236 (2d Cir. 2011) ................................................................................................ 5

### State Cases

Abreu v. Amaro,
  534 So. 2d 771 (Fla. Dist. Ct. App. 3d Dist. 1988) ............................................................... 3

Bank of Am. v. Bank of Salem,
  48 So. 3d 155 (Fla. Dist. Ct. App. 1d Dist. 2010) ................................................................. 3

Silva v. De La Noval,
  307 So. 3d 131 (Fla. Dist. Ct. App. 3d Dist. 2020) ............................................................... 3

### Federal Statutes

18 U.S.C. § 371.................................................................................................................... 8

18 U.S.C. § 1349.................................................................................................................. 8

21 U.S.C. § 853.................................................................................................................... 2

21 U.S.C. § 853(n)(6)(A)....................................................................................................... 2

21 U.S.C. § 853(n)(6)(B)....................................................................................................... 2

ii

**PRELIMINARY STATEMENT**

The United States of America (the "United States" or the "Government") respectfully submits this memorandum of law in opposition to the cross-motion for summary judgment by Claimant Jeanne Romano ("Claimant") dated March 14, 2025 ("Cl. Brf.").

The Government respectfully incorporates by reference, as if fully set forth herein, the complete contents of its Memorandum of Law in Support of Its Motion for Summary Judgment ("Pl. Brf."), Declaration of Diane C. Leonardo with attached exhibits ("Leonardo Decl.") and the United States' Statement Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("USA 56.1 Stmt.") served on March 14, 2025.

In support of her cross-motion for summary judgment, Claimant attached as exhibits: 1) her deposition transcript, dated December 19, 2024 (Claimant Exhibit 1); 2) her declaration dated March 12, 2025 (Claimant Exhibit 2); 3) a declaration from Michael Romano ("Defendant"), her son, dated March 3, 2025 (Claimant Exhibit 3); 4) a declaration from Celia Wells, her daughter, dated July 20, 2021 (Claimant Exhibit 4); and 5) a declaration from Domenick Pelle, her attorney, dated July 2021 (Claimant Exhibit 5).  The declaration from Celia Wells (Claimant Exhibit 4) is the exact same declaration filed with the Court as part of Claimant's ancillary petition (Docket Entry ("DE") 587 at pp. 8-9).  The declaration from Domenick Pelle (Claimant Exhibit 5) is the exact same declaration filed with the Court as part of Claimant's ancillary petition. DE 587 at pp. 11-12).[1]

---

[1] According to the New York State Unified Court System Attorney search, Mr. Pelle is now deceased.

1

Claimant's deposition testimony and the attached declarations are rife with inconsistencies and contradictions and only prove that she is unable to set forth the elements of a constructive trust to establish standing. Further, Claimant, even assuming arguendo that she was able to establish that the real property located at 8154 Via Bolzano, Lake Worth, Florida (the "Property") was held in a constructive trust, cannot prove the merits of her claim either by demonstrating priority of ownership of the forfeited property at the time of the offense under 21 U.S.C. § 853(n)(6)(A), or by demonstrating that she acquired the property subsequently as a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B). Indeed, Claimant specifically acknowledges that she does not assert a claim to the property pursuant to 21 U.S.C. § 853 (n)(B)(6). See Cl. Brf. at p. 7, fn 2.

## ARGUMENT

## POINT I

## CLAIMANT HAS NOT SET FORTH THE ELEMENTS OF A CONSTRUCTIVE TRUST AND HER CLAIM FAILS FOR LACK OF STANDING

In remanding this matter, the Second Circuit found that, at the motion to dismiss stage, and "[a]ccepting Jeanne Romano's petition as true, as we must, she plausibly stated the terms of a constructive trust under Florida law, including that it would be against equity for Michael Romano to retain possession of the property in order to satisfy part of his forfeiture." United States v. Mosca, No. 21-2109, 2023 U.S. App. LEXIS 27382, at *6-7 (2d Cir. October 16, 2023). The Second Circuit further directed that "[i]f the district court determines that Jeanne Romano has standing, the district court must determine what interest Michael Romano had in the property under Florida law." Id. at *7.

Despite Claimant's assertion that the Second Circuit already determined that Claimant, by virtue of her ancillary petition, had established standing (Cl. Brf. at p. 12), the Second Circuit

specifically directed that the district court **determine if** Claimant has standing. As discussed below, Claimant cannot show that she has standing and her petition should be dismissed.

Pursuant to Florida state law, courts may impose a constructive trust, under a clear and convincing standard of proof of: (1) a promise, express or implied; (2) transfer of the property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment. Abreu v. Amaro, 534 So. 2d 771, 772 (Fla. Dist. Ct. App. 3d Dist. 1988); Bank of Am. v. Bank of Salem, 48 So. 3d 155, 158 (Fla. Dist. Ct. App. 1d Dist. 2010); Silva v. De La Noval, 307 So. 3d 131, 134 (Fla. Dist. Ct. App. 3d Dist. 2020).[2]

Claimant asserts that she "has shown by clear and convincing evidence that there was an express promise, that the Property was conveyed in reliance on the promise, that a confidential relationship existed between mother and son, and that it would be unjust to enrich Michael and the government by taking from Mrs. Romano what she had completely bought, paid for, and managed for over 20 years." Cl. Brf. at p. 12.

As discussed more fully in the United States' Memorandum in Support of Summary Judgment, Claimant cannot establish the existence of a constructive trust.[3] While the Claimant's deposition, her declaration, as well as the declarations of her son, her daughter and her now-deceased attorney are replete with contradictions recounting the circumstances of establishing a constructive trust for the Property, they only serve to prove that a constructive trust does not exist with regard to title to the Property and has never existed. See Claimant's Exhibits 2-5.

---

[2] The elements of a constructive trust in New York State and Florida (where the Property is located) are similar. In its decision, the Second Circuit cited to Florida cases.

[3] The United States addressed other elements necessary to prove the existence of a constructive trust in its initial Memorandum of Law. For the purposes of this opposition, the United States focuses on the elements of an express promise and reliance on an express promise and expressly does not concede that Claimant has proven any other element.

Noticeably, and glaringly absent, from Defendant's declaration, made under the penalty of perjury, is any representation, statement, or affirmation that he made a promise to reconvey the Property if so requested by Claimant.  Indeed, Defendant stated that he did not know about Claimant's intentions to transfer the Property until after the fact. See Claimant's Exhibit 3 at p. 3 (Domenick Pell "advised her to deed her real estate to her children, my mother deeded the Property to me. **I was unaware that she intended to until after the fact**, when she told me she deeded the Via Bolzano property to me…")(emphasis supplied). Defendant also denies being at meeting with Claimant's attorney and his sister Celia Wells to discuss the estate planning. Id. at p. 3 ("My mother has previously said that her children (which included me) were present for the discussion she had with Mr. Pelle, but I was not present for the transfer."); see also Claimant's Local Rule 56. 1 Statement at ¶ 41, fn 1 ("Celia Wells recalls that Michael Romano was present at the meeting with Mr. Pelle. Wells Decl. at p.1. Michael Romano states that he was not present. MRomano Decl. at p. 3").

Further, Claimant declared that:

> My sons agreed that if I ever needed to sell these properties to a third party, that was a right I was reserving to myself. Domenick explained that the properties were being transferred into what he called a constructive trust, and **because my children understood at the time of transfer that I reserved the right** to ask for the properties back if I needed them, they would be legally obligated to do so.

See Claimant Exhibit 1 at ¶ 13.

The sworn statements of Claimant, Defendant and Celia Wells contradict each other with regard to the most fundamental elements of a constructive trust, i.e, that the transfer was made upon the reliance of an express promise. Defendant was not present at an alleged estate planning meeting and Defendant specifically denied even being aware of the transfer until after the fact. It is axiomatic that if Defendant was not aware of the discussion and not aware that the Property

4

was transferred to him until after the fact, a constructive trust was not created. In the absence of proof of a constructive trust, Claimant is unable to prove standing to assert her claim to the Property and her claim should be dismissed.  Willis Mgmt. (Vermont), Ltd. v. United States, 652 F.3d 236, 242 (2d Cir. 2011) ("State law determines a petitioner's interest in the property at issue."). If a third-party petitioner possesses no legal interest under applicable state law the claim must be dismissed for lack of standing. See United States v. Ribadeneira, 105 F.3d 833, 835 (2d Cir. 2011); United States v. Timley, 507 F.3d 1125, 1130 (8th Cir. 2007)(distinguishing between "legal interest" required for claimant to establish standing under Section 853(n)(2), and "superior legal interest" required for claimant to ultimately prevail on merits under Section 853(n)(6))…"If the claimant has no interest under state law, the inquiry ends, and the claim fails for lack of standing.").

## POINT II

### CLAIMANT CANNOT ESTABLISH THAT SHE HAS A RIGHT IN THE PROPERTY SUPERIOR TO THAT OF THE GOVERNMENT

Claimant's arguments regarding her "superior possession" to the Property are based upon several mischaracterizations of the facts and the law. Notably, Claimant asserts, incorrectly, that "[a]s an initial matter, none of the money paid by Michael Romano was paid until after Jeanne Romano took possession." See Cl. Brf. at p. 10. This statement is based on Claimant's erroneous contention that she took title to the Property on April 16, 2003.  She did not.

### A.    The Purchase of the Property

The records regarding the purchase of the property reflect that Defendant contracted for the purchase of the Property in April 2003 and subsequently made all the required payments until the time of the closing in April 2004. See Leonardo Decl., Exhibit 1, USA013, 015, 014, 103-

5

104. Indeed, every single decision regarding the construction of the Property was made by Defendant. See Second Declaration of Diane C, Leonardo, dated March 28, 2025, Exhibit 3, at USA0009 (Defendant selecting outlet locations); USA0010 (Defendant confirming choice of a toilet paper holder; USA0020-0044 (Defendant initializing every detail of work performed).[4] On March 24, 2004, the purchase contract was amended to include Claimant as an additional purchaser, along with Defendant as the purchaser. Id. at USA0105. On the date of the closing for the Property, the Warranty Deed only listed the builder as the grantor and Claimant as the grantee. Id. at USA0002. Claimant thereafter deeded the Property to Defendant in 2007. DE 587 at ¶ 6.

Claimant's self-serving statements that she made a down payment on the Property, additional payments to the mortgage and payments to "repay" Defendant between 2004 and 2007 are not supported by any evidence produced by Claimant and are contradicted by other evidence.

For example, Claimant alleged that she made a $65,000 cash deposit toward the Property from a combination of her accounts and from an inheritance from her deceased mother. See Leonardo Decl., Exhibit 2 at pp. 29-30. However, there is no record of such a payment in the sales records for the Property and her mother did not die until 2009, five years later. Id. at p. 30.

Curiously, Claimant's then-counsel asserted that her down payment for the Property $100,000 is cash, a claim that Claimant herself does not set forth. In objecting to the Report and Recommendation regarding forfeiture, Defendant's attorney, the same one allegedly in receipt of Claimant's records represented to the Court that:

---

[4] The United States' initial memorandum and declaration included in Exhibit 1 the cited pages of the documents relating to the purchase of the Property. The entire file is attached herein in response to Claimant's and Defendant's representations as to Defendant's involvement in the construction of the Property.

6

> Of this, Mrs. Romano made a $100,000 cash payment and the rest was paid with a mortgage loan. Soon after the property was purchased, Mrs. Romano renovated the property. The renovations were paid for, in part, with funds belonging to Michael Romano. Michael's payment of these expenses is the only instance where property traceable to the fraud was used to pay for any aspect of the Via Bolzano property. In December 2007 when both Michael Romano's father and mother were experiencing severe health problems, Mrs. Romano deeded the Via Bolzano property to the defendant as a **gift**. By then, she had paid off the remainder of the mortgage.

DE 375.  Claimant's then-counsel also represented that the Property was a gift to Defendant.

Claimant's assertion that she does not have all her records because her former attorneys failed to retain copies of records is belied by the fact that Claimant asserted not once, but twice that she was in the possession of records to support her claim. See DE 410-1 at ¶ 6 ("I repaid every penny of this aforementioned loan from my son over the next several years and can show checks for repayment to my son."); DE 587 at ¶ 2 ("I repaid the money well prior to 2007 using my own funds. I have maintained written records of those repayments.")

In discovery in this case, Claimant produced 188 pages of limited, assorted pay stubs, bank statements, checks and notes of payments dating back to 2004, none of which showed alleged repayments to Defendant. See for e.g. Second Leonardo Decl., at Exhibit 4; Leonardo Decl. Exhibit 2 at p. 37 ("I gave him sometimes cash, sometimes a check."); p. 46 (Q: Here's my question, did you make any notes whatsoever [in your ledger] that you gave your son cash to pay him back? A: No, I did not.")

For the first time, Claimant alleges that her need to begin estate planning because of a traffic accident while in the Netherlands in 2006 for which she "spent a long time recuperating." See Claimant Exhibit 2 at ¶ 10.  Her previous assertion that she was able to amass additional funds to pay off a $175, 000 mortgage and over $140,000 to Defendant in a 2-3 year period from funds by working two jobs and overtime is belied by her claims to be recuperating in 2006 form

7

a serious injury.[5] In short, Claimant produced zero evidence that she contributed in any way to the purchase of the Property.

**B.     Claimant's Attempt to Relitigate Defendant's Conviction is Misplaced**

Claimant's argument that the Property should not be forfeited because Defendant's conviction for "conspiracy to commit mail and wire fraud was not criminal until July 30, 2002…" is frivolous. The crime of conspiracy to violate the mail and wire fraud statute "exist[ed]" under the general conspiracy statute in 18 U.S.C. § 371 long before the criminal conduct underlying Defendant's convictions.   Claimant provides no legal authority to support her implicit assertion that the 2002 codification of the separate conspiracy provision in 18 U.S.C. § 1349 is material to her third-party claim and the Government is aware of none.  In any event, the Defendant did not contract to buy the Property until 2003, after the 2002 codification.

Further, Claimant's argument sounds in the Ex Post Facto clause of the Constitution, but the Second Circuit rejected the premise of this argument in United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999).  In Monaco, as here, Defendant was "convicted not on any substantive count of money laundering, but for the continuing offense of conspiracy to commit money laundering."  Id.  The Second Circuit explained that "[i]t is well-settled that when a statute is concerned with a continuing offense" — like conspiracy to commit wire or mail fraud and money laundering — "the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute."  Id. (internal quotation marks omitted).  "A conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto clause unless it was possible for the jury, following

---

[5] The Government notes that one of Defendant's bank accounts at Chase Manhattan Bank, account number ending in 9601, that was previously ordered forfeited by this Court, was an account that Defendant maintained in trust for Claimant.

the court's instructions, to convict exclusively on pre-enactment conduct." Id. (internal quotation marks omitted).  In United States v. Kalish, the Second Circuit applied this rationale and rejected the defendant's ex post facto challenge to forfeiture, 626 F.3d 165, 168 (2d Cir. 2010) ("Since [the defendant's] criminal conduct continued well past August 23, 2000 [the enactment of § 2461], the forfeiture order did not violate the Ex Post Facto Clause."), and the Eleventh Circuit expressly rejected Claimant's argument with respect to § 1349 in United States v. Valladares, 544 F.3d 1257, 1271 (11th Cir. 2008) ("In addition, because the pharmacy conspiracy continued after July 2002, when § 1349 became effective, the court's forfeiture order did not violate the Ex Post Facto Clause."). Here, assuming arguendo that Claimant was able to make this argument on Defendant's behalf, Defendant's criminal conduct continued for more than six years past the enactment of § 1349.

## **CONCLUSION**

For the foregoing reasons, and as further detailed in its Memorandum of Law dated March 14, 2025, the United States' motion for summary judgment should be granted and the Claimant's petition should be dismissed.

Dated: Central Islip, New York
     March 28, 2025

              Respectfully submitted,
              JOHN J. DURHAM
              United States Attorney

     By:    /s/ Diane C. Leonardo
              Diane C. Leonardo
              Assistant U.S. Attorney
              (631) 715-7854

9

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1**

I, Diane C. Leonardo, certify that the United States' Memorandum of Law in Opposition to Claimant Jean Romano's Motion for Summary Judgment, dated March 28, 2025, complies with the Individual Practice Rules and Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, in that it contains 2829 words[6].

Dated: Central Islip, New York
March 28, 2025

By:    */s/ Diane C. Leonardo*
Diane Leonardo
Assistant U.S. Attorney
(631) 715-7854

---

[6] These word-count limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes. Local Civ. R. 7.1(c).

10