UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

**UNITED STATES OF AMERICA'S RESPONSES TO CLAIMANT'S STATEMENT PURSUANT TO LOCAL RULE 56.1**

-against-

Cr. No. 09-0168 (S-2)(DLI)

MICHAEL ROMANO AND
WILLIAM KEARNEY,

Defendants.

----------------------------------------------------------X

Pursuant to Rule 56.1 ("Rule 56.1") of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), the United States of America ("United States"), by its attorney, JOHN J. DURHAM, United States Attorney for the Eastern District of New York, Diane C. Leonardo, Assistant United States Attorney, of counsel, submits the following in response to Claimant Jeanne Romano's (Claimant) Statement of Undisputed Material Facts:

## GENERAL OBJECTIONS

Claimant repeatedly fails to cite to facts that would be admissible in evidence at a hearing of this matter, as required by Rules 56(c) and (e) of the Federal Rules of Civil Procedure ("Rule 56") and Rule 56.1 to support certain of her statements of uncontroverted material facts; thus, Claimant's inadmissible statements should be rejected as insufficient to establish a genuine issue of material fact, and United States statements should be deemed undisputed. To the extent that Claimant's statements may be offered as evidence in support of Claimant's case-in-chief, the statements should be rejected as inadmissible, because they consist of unsupported

1

allegations, speculation, or legal conclusions, rather than facts, as required by Rules 56(c) and

(e) and Local Civil Rule 56.1.

**The Initial Pleadings**

1.      On November 10, 2010, a second superseding indictment was returned against Mich Romano and others, charging them with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count 1ss) and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1957(b) and 1957(d)(1) (Count 2). Second Superseding Indictment, (ECF 168).

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

2.      Michael Romano holds title to certain real estate known as 8154 Via Bolzano, Lake Worth, Florida ("the Property"). Declaration of Michael Romano ("MRomano Decl."), Exhibit 3, at p.1.

**United States' Response:**

The United States admits this statement.

3.      Both counts of the Superseding Indictment included criminal forfeiture allegations. The forfeiture in Count 1ss is related to conspiracy to commit mail and wire fraud and was sought pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The forfeiture in Count 2ss is related to conspiracy to commit money laundering, seeking forfeiture pursuant to 18 U.S.C. § 982(a)(1). Second Superseding Indictment, (ECF 168).

**United States' Response:**

The United States admits this statement.

4.      Michael Romano was convicted of both counts. Memorandum and Order Adopting Reports and Recommendations, issued April 29, 2021, ECF 556 (hereinafter "April 2021 Memorandum & Order").

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

5.      By a Report and Recommendation issued July 26, 2013, a magistrate judge recommended that the District Court order that the Property be forfeited to the Government. Report and Recommendation (ECF 373).

**United States' Response:**

The United States admits this statement, but avers that the Court also recommended the forfeiture of other specific assets and the imposition of a money judgment.

6.      When Michael Romano was sentenced on February 27, 2014, the District Court summarily adopted the Report and Recommendation and ordered him and a co-defendant to forfeit $32,220,617. April 2021 Memorandum & Order.

**United States' Response:**

The United States admits this statement, but avers that the Report and Recommendation also recommended the forfeiture of specific assets and real properties.

7.      On appeal, the Second Circuit affirmed both the convictions and sentences. United States v. Romano, 794 F.3d 317, 340 (2d Cir. 2015). However, it vacated the forfeiture order because the "record... effectively eliminates the presumption that the court gave the recommendation proper consideration. And in the absence of any discussion of defendants' objections to either report, it also raises a question as to whether the court gave de novo consideration to the magistrate judge's other recommendation." Id. at 794 F.3d 341.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

8.      On April 29, 2021, the District Court issued the April 2021 Memorandum & Order, holding, inter alia, that the Property should be forfeited.

**United States' Response:**

The United States admits this statement.

9.      On May 27, 2021, the Court issued a Preliminary Order of Forfeiture (ECF 574) against Michael Romano, ordering, inter alia, that the Property be forfeited to the Government.

**United States' Response:**

The United States admits this statement.

3

10.     On July 28, 2021, Claimant Jeanne Romano filed a Motion for Return of Property (ECF 587), seeking a hearing to adjudicate her claim to the Property under 21 U.S.C. § 853(n)(2).

**United States' Response**:

The United States admits this statement, but avers that Claimant Jeanne Romano ("Claimant") also filed a petition dated April 22, 2014. Docket Entry ("DE") 410-1.

11.     On February 2, 2022, the District Court issued the Memorandum Order (ECF 619), finding that Mrs. Romano had failed to show she had standing to bring the petition and, even if she had, that Mrs. Romano had failed to "allege her superior interest in the Property."

**United States' Response**:

The United States admits this statement.

12.     On appeal, the Second Circuit ruled that Mrs. Romano had "plausibly stated the terms of a constructive trust under Florida law, including that it would be 'against equity' for Michael Romano to retain possession of the property in order to satisfy part of his forfeiture" and that she "has also plausibly pleaded that she has a superior interest in the property." United States v. Mosca, Case Nos. 21-1209 (L), 21-1271 (Con), 21-2585 (Con), 22-223 (Con), 22-701(Con) (2d Cir. Oct. 16, 2023), 2023 U.S. App. LEXIS 27382, at *6-7.

**United States' Response**:

The United States denies this statement. In remanding this matter, the Second Circuit found that, at the motion to dismiss stage, and "[a]ccepting Jeanne Romano's petition as true, as we must, she plausibly stated the terms of a constructive trust under Florida law, including that it would be against equity for Michael Romano to retain possession of the property in order to satisfy part of his forfeiture." United States v Mosca, 2023 U.S. App. LEXIS 27382, at *6-7 (2d Cir. October 16, 2023). The Second Circuit further directed that "**[i]f** the district court determines that Jeanne Romano has standing, the district court must determine what interest Michael Romano had in the property under Florida law." Id. at *7 (emphasis supplied).

**The Claimant**

13.     Claimant Jeanne Romano is an 85-year-old widow, having been born in Brooklyn in 1939. She lost her husband in 2014. She resides at 9 Lilac Lane, Levittown, New York, where she has lived for over 40 years. Deposition of Jeanne Romano ("JRomano Tr."), Exhibit 1, at p.6; Declaration of Jeanne Romano ("JRomano Decl."), Exhibit 2.

**United States' Response**:

The United States submits that this is not a statement of material fact to which a response is required.

14.     Mrs. Romano is the mother of five adult children: daughter Celia Wells; and Joseph, Salvatore, Michael, and Vincent Romano. JRomano Decl. at p. 1; MRomano Decl. at p.1; JRomano Decl. at p.1; Declaration of Celia Wells ("Wells Decl."), Exhibit 4, at p.1.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

15.     Mrs. Romano worked as a registered nurse until her retirement in 2012. JRomano Decl. at p. 1.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

16.     For many years during her working career, Mrs. Romano worked 12-hour shifts five days a week at Mid-Island Hospital in Bethpage (now St. Joseph's) and held a second position on weekends at A. Holly Patterson Home for the Aged in Uniondale. JRomano Decl. at p. 1; JRomano Tr. 9-10.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

**The Purchase of the Property**

17.     In about 2003, Mrs. Romano and her husband, Joseph decided to purchase a property in Florida to use for vacation and eventual retirement. JRomano Decl. at p. 1; MRomano Decl. at p. 1; JRomano Tr. 24.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

18.     Mrs. Romano's son, Michael Romano, offered to look for a suitable Florida property for her and her husband. Michael Romano found a house under construction at 8154 Via Bolzano, Lake Worth, Florida. (referred to herein as "the Property"). JRomano Decl. at p. 1; MRomano Decl. at p. 1.

5

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. <u>See</u> Leonardo Decl., Exhibit 1 at USA 0103-104.

19.     Mrs. Romano agreed the Property would be suitable. Michael Romano arranged its purchase in her name. JRomano Decl. at p. 1; MRomano Decl. at p. 1.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. <u>See</u> Leonardo Decl., Exhibit 1 at USA 0103-104.

20.     The purchase price of the Property was $475,000. JRomano Tr. 32. Mrs. Romano took title on April 16, 2003. JRomano Decl. at p. 1.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. <u>See</u> Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. <u>Id</u>. at USA0002.

21.     To pay for the property, Mrs. Romano borrowed $175,000 from Chase Manhattan Bank, giving that Bank a mortgage on the Property. The remainder of the purchase price came from her savings and from money she received from her mother, Odesilia Del'Erario. JRomano Decl. at p. 1.

**United States' Response:**

The United States admits that Claimant obtained a mortgage in the amount of $175,000, but denies that the remainder of this statement that the purchase price was from her savings and an inheritance. There are no records of Claimant advancing a $65,000 deposit toward the Property or receiving an inheritance in 2004. <u>See</u> Leonardo Decl., Exhibit 1; Exhibit 2 at p. 30 (Claimant's mother died in 2009).

22.     However, after closing, while the Property was still being built, Michael Romano arranged for a number of upgrades that he believed his parents would like and that would enhance the value of the Property. JRomano Decl. at p. 2; MRomano Decl. at p. 1. He made these arrangements as a surprise, paying for them himself. The biggest change he made was to have a swimming pool installed. The total cost of the upgrades was about $142,000 or $143,000. JRomano Decl. at p. 2; MRomano Decl. at p. 1.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. <u>See</u> Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the

6

property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

23.     Michael Romano believed he had his mother's permission to order upgrades on the Property. MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. See Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

24.     Mrs. Romano visited the Property while it was under construction several times. When she discovered all of the upgrades ordered by her son, especially the pool, she was angry. JRomano Decl. at p. 2; MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. See Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

25.     Mrs. Romano's husband, Joseph, had undergone a laryngectomy, so he could not use the pool. Mrs. Romano believed her son had been thoughtless for installing a pool without asking for their permission. She believed that the pool would serve as a constant reminder to Joseph of his disability. MRomano Decl. at p. 1-2.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. See Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

26.     Michael Romano recalls Mrs. Romano telling him, "Your father can't even go in the pool. Why would you put something like that in? That's like bringing someone to a restaurant who can't eat. You should have discussed this with me." MRomano Decl. at p. 1-2.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is

required.

27.     Mrs. Romano did not believe that she had given her son permission to order upgrades on the house. She told Michael Romano that it was her house and that she was going to repay him every cent of the $143,000 he had spent on the upgrades. MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. See Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

28.     Michael Romano recalls that his mother was quite angry about the upgrades. MRomano Decl. at p. 2.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

29.     Over a two-year period, Mrs. Romano repaid Michael Romano the $143,000 he had advanced. JRomano Decl. at p. 2-3; MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce any records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

30.     While Mrs. Romano was repaying her son, she made extra principal payments on the Property's $175, 000 mortgage. JRomano Decl. at p. 2-3; MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce any records of alleged repayments to Defendant or the source of funds to make additional principal payments. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

31.     Michael Romano stated that at the time, Mrs. Romano told him that "her philosophy was that she was paying more in interest with a bank than she was getting in her account. I recall that she was careful with money and worked two jobs for years, as well as having inherited from her deceased mother's estate." MRomano Decl. at p. 2.

**United States' Response:**

The United States denies this statement. Claimant's mother did not die until 2009 and accordingly, Claimant could not have inherited money until after 2009. See Leonardo Decl., Exhibit 2 at p. 30.

32.     Other than the $143,000 Michael Romano advanced to pay for the upgrades, he contributed nothing to the purchase of the Property. He was not a signer on the mortgage note, and he has never contributed any money toward principal or interest payments, taxes, utilities, or any other expenses related to the Property. JRomano Decl. at p. 3. MRomano Decl. at p. 3-4. Michael Romano has had nothing to do with the Property from the time the pool was completed in 2004 or 2005 and the present. Id.

**United States' Response:**

The United States denies this statement. Michael Romano was the purchaser of the Property. See Leonardo Decl., Exhibit 1 at USA 0103-104.  Further, Claimant did not obtain title to the property until April 22, 2004. Id. at USA0002. Finally, in addition to upgrades, Defendant made every design or color choice at the Property. See Second Leonardo Decl., Exhibit 3.

33.     Michael Romano recalls that he deposited repayments he received from his mother in his personal checking account. MRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement; there is no page 5 to the Defendant's Declaration. Interpreting this citation to refer to page 4 of the Defendant's Declaration, he stated that he did not "recall much about the repayment, but [] would have deposited them in my personal checking account" without further identifying which account.  The Preliminary Order of Forfeiture directed the forfeiture of nine personal accounts of Defendant's held at JP Morgan Chase, as well as numerous investment and other accounts held in Defendant's name.  See DE 574. Further, despite her verification that she maintained records, Claimant failed to produce any records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

34.     The government obtained all of the records for Michael Romano's personal checking account when it seized the account. Id.

**United States' Response:**

The United States denies this statement; there is no page 5 to the Defendant's Declaration. Interpreting this citation to refer to page 4 of the Defendant's Declaration, he does not further identify which account he claims were seized by the government.  The Preliminary Order of Forfeiture directed the forfeiture of nine personal accounts of Defendant's held at JP Morgan Chase, as well as numerous investment and other accounts held in Defendant's name.  See DE

574. Further, despite her verification that she maintained records, Claimant failed to produce any records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

35.    Michael Romano recalled seeing copies of some of the checks Mrs. Romano paid to him in the government's discovery. He recalls that the government suspected that he was laundering money through Mrs. Romano. MRomano Decl. at p. 5. He found the suggestion humorous, because he knew that the payments were related to repayment of the cost of the upgrades and because forfeiture of the Property was not an issue at that point.

**United States' Response:**

The United States denies this statement; there is no page 5 to the Defendant's Declaration. Interpreting this citation to refer to page 4 of the Defendant's Declaration, he does not further identify which account he claims were seized by the government.  The Preliminary Order of Forfeiture directed the forfeiture of nine personal accounts of Defendant's held at JP Morgan Chase, as well as numerous investment and other accounts held in Defendant's name.  See DE 574.  Further, and despite her verification that she maintained records, Claimant failed to produce any records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

**Management of Property**

36.    Mrs. Romano rented the Property to a tenant to defray upkeep costs and so that it would be occupied. She has had only one tenant since 2007, and he continues to occupy the Property. JRomano Decl. at p. 3. Mrs. Romano receives the rent by check every month and deposits it into her personal account. Id.

**United States' Response:**

The United States denies this statement, the Property was not rented until 2014 and the tenant pays by money order. See Leonardo Decl., Exhibit 2 at pp. 17-18.

37.    Michael Romano has never been paid, directly or indirectly, any of the rent associated with the Property. JRomano Decl. at p. 3.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

**Estate Planning**

38.    In 2006, Mrs. Romano was vacationing in Europe. While in Amsterdam, she was crossing a street when she was struck by a motorcycle. She spent about 10 days in intensive care in the Netherlands and then had to be returned to the United States on a medical evacuation flight. JRomano Decl. at p. 3; MRomano Decl. at p. 2.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

39.     Michael Romano believes that while his mother recovered physically, the accident affected her thinking profoundly. MRomano Decl. at p. 2-3. She told Michael Romano that she had begun focusing on her estate plans. ld.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

40.     Mrs. Romano stated that her recuperation caused her to think about what would happen when she became infirm and had to reside in a home like the A. Holly Patterson in which she had worked part-time for many years. JRomano Decl. at p. 3.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

41.     In May 2007, Mrs. Romano consulted Domenick Pelle, a longtime family friend and attorney to discuss estate planning. Celia Wells was present for the consultation. Wells Decl. at p.1; JRomano Decl. at p. 4.

**United States' Response:**

The United States admits that this was Claimant's testimony, but avers that Claimant's and Celia Wells' statement that Defendant was present for the discussion is specifically controverted by Defendant. See Claimant Exhibit 3 at p. 3.  Claimant admits in a footnote that Defendant stated he was not present for the meeting. See Claimant's 56.1 Statement, ¶ 4 at footnote 1.

42.     Mrs. Romano wanted to divide her assets among her children to limit the time and expense of probate, as well as to minimize federal and state estate taxes and to plan for a time that she and her husband might incur long-term care expense. JRomano Decl. at p. 4; Wells Decl. at p.1.

**United States' Response:**

The United States admits that this was Claimant's testimony, but avers that Claimant's and Celia Wells' statement that Defendant was present for the discussion is specifically controverted by Defendant. See Claimant Exhibit 3 at p. 3.  Claimant admits in a footnote that Defendant stated he was not present for the meeting. See Claimant's 56.1 Statement, ¶ 4 at footnote 1.

11

43.    Upon Mr. Pelle's advice, Mrs. Romano transferred some jewelry to her daughter to be given to other relatives upon her death. Wells Decl. at pp.1-2.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

44.    Mrs. Romano transferred the title to her home on Lilac Lane to her son Vincent. MRomano Decl. at p. 3; JRomano Decl. at p. 4. However, she has since taken the title away from Vincent and deeded it instead to Celia Wells and a granddaughter. JRomano Tr. 61.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

45.    Mrs. Romano also transferred the title of the Property to Michael Romano. JRomano Decl. at p. 4; MRomano Decl. at p. 3; Wells Decl. at p.1.

**United States' Response:**

The United States admits that the title of the Property was transferred to Defendant, but denies that it was transferred pursuant to the terms of a constructive trust. See Claimant Exhibit 3 at p. 3.

46.    Mrs. Romano had previously provided ample money to assist Celia Wells. JRomano Decl. at p. 4; Wells Decl. at p.1.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

47.    Mrs. Romano told Mr. Pelle that Michael and Vincent Romano were probably going to inherit the Lilac Lane and Via Bolzano properties, but she was concerned that if she wanted the properties returned to her, her sons would have to do so. Declaration of Dominick A. Pelle, Esq. ("Pelle Decl."), Exhibit 5.

**United States' Response:**

The United States denies this statement that the Property was transferred pursuant to the terms of a constructive trust. See Claimant Exhibit 3 at p. 3.

12

48.     Mr. Pelle advised Mrs. Romano that if she conveyed title to a property to her son, with the promise by the son that the property be reconveyed to her without consideration when she demanded it, that the courts of New York would enforce that promise based upon the familial confidential relationship between a mother and her sons. ld.; Wells Decl. at p.1; JRomano Decl. at p. 4.

**United States' Response:**

The United States denies this statement that the Property was transferred pursuant to the terms of a constructive trust. See Claimant Exhibit 3 at p. 3.

49.     Mr. Pelle told Mrs. Romano that the legal term for the arrangement was a "constructive trust" under New York law. Pelle Decl.; JRomano Decl. at p. 4

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

50.     Mr. Pelle had experience in dealing with such constructive trusts over the years. Pelle Decl.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.


51.     Mrs. Romano told Mr. Pelle that based on his explanation and a promise to reconvey by her sons, she was conveying the Property to Michael Romano subject to her being able to regain title if when she wanted reconveyance. Pelle Decl; JRomano Decl. at p. 4.

**United States' Response:**

The United States denies this statement that the Property was transferred pursuant to the terms of a constructive trust. See Claimant Exhibit 3 at p. 3.

52.     Michael Romano and Vincent Romano acknowledged that Mrs. Romano had the right to reclaim and to sell the properties to a third party. JRomano Decl. at p. 4-5; Wells Decl. at p.1; Pelle Decl.

**United States' Response:**

The United States denies this statement that the Property was transferred pursuant to the terms of a constructive trust or that Defendant made any acknowledgments about Claimant's reclaiming the Property. See Claimant Exhibit 3 at p. 3.

13

53.     Since that time, Vincent agreed to return the Lilac Lane property to Mrs. Romano, and she reconveyed it to Celia Wells and a granddaughter. JRomano Tr. 61.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

54.     The discussion with Pelle was consistent with conversations Mrs. Romano has had with her children about her concern that these two properties might be needed to be sold for her support someday. JRomano Decl. at p. 4.

**United States' Response:**

The United States denies this statement that the Property was transferred pursuant to the terms of a constructive trust or that Defendant made any acknowledgments about Claimant's reclaiming the Property. See Claimant Exhibit 3 at p. 3.

55.     Mrs. Romano transferred the Lilac Lane property to Vincent Romano and the Property to Michael Romano - for no consideration. JRomano Decl. at p. 4-5.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required.

**Property Expenses**

56.     Since the transfer of the Property to Michael Romano, Mrs. Romano has continued to pay for all upkeep and taxes on the Property. JRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce any records of payments to toward the Property. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

57.     The homeowner's association statements for the Property are still in Mrs. Romano's name. JRomano Decl. at p. 5.

**United States' Response:**

58.     Mrs. Romano continues to pay every bill associated with the Property. JRomano Decl. at p. 5.

---

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce records of payments toward the Property. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

59.    The water and sewer taxes for the Property are sent to Mrs. Romano at 9 Lilac Lane, Levittown, New York. JRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce records of payments toward the Property. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

60.    Michael Romano has never lived at 9 Lilac Lane, Levittown, New York. JRomano Decl. at p. 5.

**United States' Response:**

The United States submits that this is not a statement of material fact to which a response is required, but avers that the tax bill notices for the Property are sent to: Michael Romano, 9 Lilac Lane, Levittown, NY. See for e.g., Jeanne Romano Document Production at pp. 122, 154.

**Records**

61.    When the government first sought forfeiture, Mrs. Romano provided all of her records on the matter to Attorney Maurice H. Sercarz of the law firm Sercarz & Riopelle, 810 Seventh Avenue, Suite 620, New York, NY 10019. JRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, it is the Claimant's burden to prove her claim and she failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

62.    She later provided the copy she had retained of those records Attorney Richard Ware Levitt, Levitt & Kaiser, 40 Fulton Street, 17th Floor, New York City, NY 10038-5077. JRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, it is the Claimant's burden to prove her claim and she

15

failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

63.     Neither of those firms retain those copies years later. JRomano Decl. at p. 5.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, it is the Claimant's burden to prove her claim and she failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

64.     In or prior to 2014, Michael Romano provided records that showed the repayments he had received from Mrs. Romano to his attorney. MRomano Decl. at p. 3. Those records have been destroyed. Id.

**United States' Response:**

The United States denies this statement. Other than her self-serving statements, and despite her verification that she maintained records, it is the Claimant's burden to prove her claim and she failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

65.     The government seized Michael Romano's personal file labeled "8154 Via Bolzano," which contained the ledger showing repayments he had received from his mother. MRomano Decl. at p. 3

**United States' Response:**

The United States denies this statement.  Other than self-serving statements, and despite her verification that she maintained records, it is the Claimant's burden to prove her claim and she failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

66.     Michael Romano asked the government through his attorney for return of his personal files. The government returned only a box containing several computer operating manuals, and titles to cars and boats. Otherwise, the box only contained empty file folders. MRomano Decl. at p. 3

**United States' Response:**

The United States denies this statement.  Other than her self-serving statements, and despite her verification that she maintained records, Claimant failed to produce records of alleged repayments to Defendant. See DE 410-1 at ¶ 6; DE 587 at ¶ 2.

Dated: Central Islip, New York
      March 28, 2025

                                        Respectfully submitted,
                                        JOHN J. DURHAM
                                        United States Attorney

                         By:   /s/ Diane C. Leonardo
                                          Assistant U.S. Attorney
                                          (631) 715-7854

To: Matthew Gilmartin, Esq.
    Attorney for Claimant