UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **AMENDED MEMORANDUM** |
| - v - | : | **DECISION** |
| | | |
| MICHAEL ROMANO, | : | 22 Civ. 02444 (DC) |
| | | 09 Cr. 00168 (DC) |
| Defendant | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**   JOSEPH NOCELLA, JR., Esq.
United States Attorney for the
Eastern District of New York
   By:   Irisa Chen, Esq.
      Assistant U.S. Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

MALVINA NATHANSON, Esq.
120 Wall Street
28th Floor
New York, NY 10005

**CHIN, Circuit Judge:**

Defendant Michael Romano moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence on the grounds that he received ineffective assistance of counsel at trial, at sentencing, and on appeal. Dkt. 633-2 at 1-2.

On June 13, 2011, following a month-long jury trial, Romano was convicted in the United States District Court for the Eastern District of New York (Bianco, *J.*) of one count of conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349

("Count 1"), and one count of conspiracy to commit money laundering, *id.* §§ 1956(a)(1)(A)(i) and 1956(h) ("Count 2"). Dkt. 661-19 at 3054-56; *United States v. Romano*, 859 F. Supp. 2d 445, 450 (E.D.N.Y. 2012). The trial court denied Romano's motion for acquittal and a new trial. *See Romano*, 859 F. Supp. 2d at 467. On November 22, 2013, after the case was reassigned, the district court (Johnson, J.) conducted a *Fatico* hearing to consider Romano's objections to sentencing enhancements proposed by the Probation Department. Dkt. 398 at 2-3. On February 27, 2014, the court sentenced Romano to 240 months' imprisonment on each count, to run concurrently. Dkt. 661-20 at 24.

Romano appealed to the Second Circuit. On July 27, 2015, the Second Circuit affirmed the judgment and sentence, except that it remanded for further proceedings with respect to restitution and forfeiture. *See United States v. Romano*, 794 F.3d 317, 341 (2d Cir. 2015).[1]

In his present motion, Romano contends that three deficiencies on the part of trial counsel entitle him to relief: (1) trial counsel failed to request an instruction precluding the jury from considering conduct occurring before July 30, 2002, the date that the statute criminalizing conspiracy to commit mail or wire fraud, 18 U.S.C. § 1349, was enacted; (2) trial counsel failed to object at sentencing when the court mistakenly assumed that Count 1 carried a maximum sentence of thirty years; and (3) trial counsel

---

[1] The issues of restitution and forfeiture are not presently before the Court. *See* Dkt. 661 at 5 n.4.

2

failed to object to Romano's twenty-year sentence on Count 2, when the jury's general verdict failed to specify whether it was finding Romano guilty of acts carrying a twenty-year maximum sentence or acts carrying a ten-year maximum. Dkt. 633-2 at 1-2. Romano also claims that he received ineffective assistance from his appellate counsel, who failed on appeal to raise trial counsel's errors below. *Id.* at 2.

For the reasons that follow, the motion is DENIED.

## BACKGROUND

**I.    *The Facts***

The facts are set forth in detail in the Second Circuit's opinion on direct appeal, which extensively reviewed the government's evidence at trial. *Romano*, 794 F.3d at 321-29. I summarize the facts here.

From the 1990s until November 2008, Romano owned and operated three successive companies that engaged in a scheme to fraudulently sell rare coins to collectors. Romano and his co-defendants sold the coins by falsely representing their grade, value, and profitability. Romano and his salesforce targeted elderly customers in particular, falsely representing that the coins were collectibles worth much more than their actual value. The scheme cost the victims millions of dollars. *See Romano*, 794 F.3d at 321-25, 338; *see also* Dkt. 661 at 1-2; Dkt. 661-20 at 21.

Romano "closely supervised the companies' sales forces," *Romano*, 794 F.3d at 324, and "[t]he company-approved sales pitches contained numerous false

3

representations, with salesmen stating that they were offering bargains . . . when in fact the quality of the offered coins was simply lower than represented," *id*. Salesmen were instructed, for example, to tell customers that the companies employed three graders and that coins were graded in accordance with the highest standards when "in fact the only 'grader' was Romano, and he did not examine the coins." *Id*. at 325. Salesmen knew that their descriptions of the companies' grading process were false and that the grades themselves were inflated. *Id*. Although they knew that Romano's companies had falsely inflated the value of the coins, the salesmen "regularly told customers that owning the coins would be profitable." *Id*. The salesmen also falsely told customers that if they ever wanted to sell the coins in the future, the Romano companies would buy the coins back or help resell them. *Id*. at 326.

Most of the conduct occurred after July 30, 2002. For example, Robert Bentzinger paid about $7,000 to purchase coins from Romano's companies in or about 2005. Dkt. 661-9 at 1517-18. In 2008, Richard Bruni, who was 77 years old at the time of trial (2011), paid one of Romano's companies $15,490 for a 1908 twenty-dollar St. Gauden's piece that he never received. Dkt. 661-3 at 547, 553-54. In 2007 and 2008, after receiving numerous telephone calls from Romano's salesmen, Betty Lou Fox purchased several thousand dollars' worth of coins, although she did not get the coins she thought she had ordered. Dkt. 661-10 at 1832-34, 1839-41. Frank Miser bought more than $180,000 in coins from two of Romano's companies beginning in 2005. Dkt. 661-5 at

944-45; Dkt. 661-6 at 976, 991. Sharon Oldham bought $147,000 in coins from Romano's companies from around 2007 to 2009. Dkt. 661-7 at 1316-17, 1322. There were others as well who bought coins from Romano's companies after July 30, 2002. *See* Dkt. 661 App'x A (Summary Table of Fact Witnesses' Testimony).[2]

Bank records showed that between 2000 and 2008, Romano's companies sold coins to 1,450 customers, generating revenue of some $32 million. Romano personally received approximately $6.7 million. *Romano*, 794 F.3d at 326-27.

## II.    *Prior Proceedings*

The prior proceedings are summarized above. In light of Romano's arguments in support of his motion, I provide some detail as to the sentencing before Judge Johnson on February 27, 2014.

After hearing from Romano and counsel, the district court noted that the Guidelines range was 262 to 327 months' imprisonment and stated that he was going to sentence Romano to 262 months. Dkt. 661-20 at 23. The following colloquy ensued:

> [AUSA]: Your Honor, there's two counts, they are each 20-year counts, so was the Court intending to split the 262, because 262 is more than 20, between the two counts?
>
> THE COURT: Well, one is for 30 years. The first count is for 30 years, I think, and one is for 20 years, I think.
>
> [AUSA]: I have to look, Your Honor. I thought they were both 20. Just give me one moment.

---

[2]    Also testifying at trial were Romano's salesmen and other employees at his companies who provided services after July 30, 2002. *See* Dkt. 661 App'x A.

5

>THE COURT:  I looked at the statute and one was 30, I think.
>
>[DEFENSE COUNSEL]:  Your Honor, there may be a statute of limitations issue if the Court were to impose 30 years on one count because I don't know when the change was made and whether all of the conduct that was alleged in the indictment took place after the applicable date of any change.
>
>THE COURT:  Okay.  I will make it, to simplify it, I'll make it 240 months to run concurrently.
>
>[AUSA]:  Yes, Your Honor.

*Id.* at 23-24.[3]

Defense counsel did not raise, prior to or during trial or at sentencing, the issue of conduct prior to the effective date of the statute.  Dkt. 661-1 ¶¶ 2-3.  Defense counsel also did not object, at sentencing, to a sentence exceeding ten years with respect to Count 2.  *Id.* ¶ 11.  Nor did defense counsel raise, on appeal to the Second Circuit, the purported errors of trial counsel.  *See Romano*, 794 F.3d at 321, 329-30, 336-37.  While Romano did raise sentencing issues on appeal, he did not raise the issues presently before the Court.[4]

---

[3]    Defense counsel contends that his comments were not correctly transcribed.  Dkt. 661-1 ¶ 7.

[4]    In June 2022, Romano was released from prison and placed on home confinement.  After just a few weeks, however, he was directed by the Bureau of Prisons to report to a halfway house and was then returned to prison.  In May 2023, he commenced proceedings pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of New Jersey to challenge the revocation of his release.  The district court, while raising concerns about the manner in which Romano's release was revoked, granted the government's motion to dismiss.  The matter

**III.**   *The Instant Motion*

In the instant motion, Romano seeks relief pursuant to § 2255 on ineffective-assistance-of-counsel grounds.  Dkt. 633.  He contends that trial counsel provided ineffective assistance in three respects and that appellate counsel was ineffective for failing to raise the errors on appeal.  The government opposed the motion on July 5, 2022.  Dkt. 653.  Romano filed a reply on July 20, 2022.  Dkt. 660.

The case was reassigned to the undersigned on August 1, 2025.

*DISCUSSION*

**I.**   *Applicable Law*

The Second Circuit has held that "a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018); *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996).

To establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must (1) show that counsel's performance was so

---

is now pending in the Third Circuit.  *See* Letter of Federal Public Defender, District of New Jersey, to the Court, dated Aug. 22, 2025 & Exh. 1.

deficient as to fall below "an objective standard of reasonableness," and (2) establish prejudice by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 669, 688, 694 (1984).  "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The *Strickland* two-part test is "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result,'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686).

## II.     *Application*

First, I address the three purported errors of trial counsel: (a) the failure to request an instruction regarding conduct pre-dating the effective date of the conspiracy statute; (b) the failure to object at sentencing when the court mistakenly assumed that Count 1 carried a maximum sentence of thirty years; and (3) the failure to object to the twenty-year sentence on Count 2.  Second, I address the purported failures of counsel on appeal.

### A. Trial Counsel

#### 1. The Effective Date of the Conspiracy Statute

Romano was convicted on Count 1 of violating the mail and wire fraud conspiracy statute, 18 U.S.C. § 1349, which became effective July 30, 2002. Trial counsel did not request a jury instruction limiting the use of evidence of conduct predating the effective date of § 1349. Romano argues that this failure constituted ineffective assistance in violation of the Sixth Amendment. I am not persuaded.

Even assuming that Romano has met the first prong of the *Strickland* test because trial counsel's failure to request an instruction was so deficient as to fall below an objective standard of unreasonableness, he clearly has failed to establish the second prong: He has not shown that there is a reasonable probability that but for this error, the result of the proceeding would have been different.

First, when continuing conduct violates a statute, the statute may be applied "to an enterprise that began prior to, but continued after, the effective date of the statute." *United States v. Harris*, 79 F.3d 223, 229 (2d Cir. 1996) (alterations accepted). Second, the evidence of conduct predating the effective date of the statute surely would have been admissible as Rule 404(b) evidence, including to show, *e.g.*, the genesis of the conspiracy, the relationship among the coconspirators, and the operations over time. *See United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) ("When it is shown that a conspiracy straddled the enactment of a statute, the government may introduce pre-

9

enactment evidence to demonstrate the conspiracy's genesis, its purpose, and its operation over time."). Third, there was extensive evidence offered at trial of *post-enactment* conduct. Indeed, most of the evidence presented at trial was about conduct after July 2002. *See* Dkt. 661 App'x A; *see also United States v. Marcus*, 628 F.3d 36, 42 (2d Cir. 2010) ("[T]he Government presented post-enactment evidence sufficient to satisfy the elements of the forced labor statute."). Finally, there was no "reasoned basis to differentiate between [Romano's] pre- and post-enactment conduct." *Id*. at 43.

Accordingly, Romano's contention that he was denied effective assistance of counsel and a fair trial because of trial counsel's failure to request a jury instruction limiting the use of evidence of pre-enactment conduct fails. *See id*. at 40, 42 (holding as to forced labor conviction, where trial court failed to instruct jury with respect to enactment date of criminal statute, "there is no reasonable probability that the jury would have acquitted [the defendant] absent the error").[5]

### 2. *The Sentence on Count 1*

The record shows that, at least initially, the district court was under the mistaken impression that Count 1 carried a thirty-year maximum sentence. Dkt. 661-20

---

[5] In *Marcus*, while affirming the forced labor conviction, the Second Circuit vacated as to the sex trafficking conviction. *Id*. at 43-44. The defendant eventually brought a § 2255 motion to challenge the forced labor conviction for, *inter alia*, ineffective assistance of counsel with respect to the straddling issue; the motion was denied in all respects. *See Marcus v. United States*, No. 14-CV-5780 (ARR), 2015 WL 3869689, at *22 (E.D.N.Y. June 22, 2015).

at 23. Romano argues that his trial counsel was constitutionally ineffective for failing to correct the district court. The argument fails.

Although the district court was initially inclined to impose a sentence of 262 months' imprisonment, the government noted that "there's two counts, they are each 20-year counts." *Id*. After some further discussion, the district court reduced the sentence from the 262 months he was initially inclined to impose to 240 months, on each count, to run concurrently. *Id*. at 24. While the district court did not explicitly explain its decision to modify the proposed sentence, the record is clear that the Guidelines range would have been 262 to 327 months' imprisonment but for the statutory maximums and that the district court was initially inclined to impose a 262-month sentence, but that it imposed a sentence of only 240 months once the government raised the issue.

Under these circumstances, Romano has failed to show a substantial likelihood that the outcome of the proceedings would have been different if his trial counsel had also raised the issue. As trial counsel explains in his affirmation, "Because the Court reduced the sentence on Count One in response to comments both by the Government and by defense counsel, it was my view that there was nothing further I could do at sentencing to ameliorate any prejudice resulting from the initial misunderstanding by the Court." Dkt. 661-1 ¶ 9.

### 3. *The Sentence on Count 2*

Count 2 charged a money laundering conspiracy, and Romano notes that where the statute is violated by conducting financial transactions knowingly involving proceeds of mail and wire fraud, 18 U.S.C. § 1956(a)(1)(A)(i), the crime carries a possible 20-year sentence, and where it is violated by engaging in a monetary transaction in property valued at $10,000 or more derived from unlawful activity, 18 U.S.C. §§ 1957(a) and 1956(h), the crime carries a maximum 10-year sentence. He argues that his trial counsel was constitutionally ineffective by not objecting to a twenty-year sentence on Count 2. Dkt. 633-2 at 22. This claim is also meritless.

It is clear from the record that Romano was guilty of at least the first form of money laundering -- conducting financial transactions knowingly involving proceeds of mail and wire fraud. The record is replete with evidence of numerous telephone calls made by Romano's salesmen as well as many transfers of money. Indeed, the sales generated by communications with 1,450 customers generated revenue, as shown in bank records, of some $32 million. *Romano*, 794 F.3d at 323-27; *see also id*. at 321 (noting that Romano was convicted of "conspiracy to engage in money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h)"). Indeed, Romano was convicted of wire and mail fraud conspiracy on Count 1. It is difficult to see how anything would have been different if trial counsel had asked for a special verdict or raised the issue at sentencing.

Moreover, Romano was sentenced to 240 months' imprisonment on each count, to run concurrently. Even if trial counsel had objected to a 20-year sentence on Count 2, the sentence on Count 1 would not have changed. *See United States v. Henry*, 325 F.3d 93, 101 (2d Cir. 2003) ("[A]n erroneous sentence on one count of a multiple-count conviction does not affect a defendant's substantial rights where the total term of imprisonment remains unaffected."); *United States v. Outen*, 286 F.3d 622, 639-40 (2d Cir. 2002). Hence, particularly in the context of a § 2255 motion, Romano has not shown a miscarriage of justice as he was properly sentenced to a concurrent term of imprisonment of 240 months on Count 1.

B.   *Appellate Counsel*

Finally, Romano argues that appellate counsel was constitutionally ineffective for failing to raise the issues identified above and for failing to argue that trial counsel was ineffective. Dkt. 633-2 at 25. This claim likewise provides no basis for relief.

The two-part *Strickland* test applies to ineffective assistance claims involving appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[T]he same test is used with respect to appellate counsel."). In the appellate context, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id*.

Here, appellate counsel's decision to pursue other issues on appeal does not amount to ineffective assistance. As discussed above, the claims raised on this motion lack merit, and even assuming they are nonfrivolous, it was not unreasonable for appellate counsel to raise other issues instead. *See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001) ("Petitioner's appellate counsel was not ineffective for failing to raise the meritless argument."); *see also United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."). Even if appellate counsel had raised these issues, Romano has not shown that a different outcome in the proceedings would have resulted. Moreover, appellate counsel raised several meritorious issues for appeal, as the Second Circuit's detailed and comprehensive opinion demonstrates. Indeed, appellate counsel succeeded in obtaining a remand with respect to restitution and forfeiture. *See Romano*, 794 F.3d at 340-41.

## *CONCLUSION*

For the reasons set forth above, Romano's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED in all respects. The Court declines to issue a certificate of appealability, as Romano has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and thus denies *in forma pauperis* status should Romano appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment and close the civil case, No. 22 Civ. 2444, and to mail a copy of this Memorandum and Order to Romano at his last known address.

      SO ORDERED.

Dated:     Brooklyn, New York
             September 30, 2025
Amended:  November 20, 2025

                                      DENNY CHIN
                                      United States Circuit Judge
                                      Sitting by Designation