UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

- v - : **OPINION**

MICHAEL ROMANO, : 09 Cr. 00168 (DC)

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:** JOSEPH NOCELLA, JR., Esq.
United States Attorney for the
Eastern District of New York
By: Diane C. Leonardo, Esq.
Assistant U.S. Attorney
610 Federal Plaza
Central Islip, NY 11722

MATTHEW THOMAS GILMARTIN, Esq.
P.O. Box 939
North Olmsted, OH 44070

**CHIN, Circuit Judge:**

In this forfeiture proceeding, the Government moves for summary judgment to dismiss the third-party petition of Jeanne Romano ("Mrs. Romano"), the mother of Defendant Michael Romano ("Romano"). Dkt. 711-1; Dkt. 711-2. Mrs. Romano cross-moves for summary judgment. Dkt. 716-1.

In her petition, Mrs. Romano requests a hearing to adjudicate the validity of her right, title, and interest with respect to a residence located at 8154 Via Bolzano,

Lake Worth, Florida ("8154 Via Bolzano"), which this Court (Johnson, *J.*) ordered forfeited following Romano's conviction. *See* Dkt. 587 at 1, 5; Dkt. 556 at 18. Mrs. Romano's petition was dismissed by this Court (Irizarry, *J.*) on February 2, 2022. *United States v. Romano*, No. 09-cr-168, 2022 WL 307792, at *1 (E.D.N.Y. Feb. 2, 2022). On October 16, 2023, the United States Court of Appeals for the Second Circuit vacated this Court's order dismissing Mrs. Romano's petition and remanded for further proceedings. *See United States v. Mosca*, No. 21-1209, 2023 WL 6799293, at *3 (2d Cir. Oct. 16, 2023) (summary order). The Second Circuit mandate issued on November 20, 2023. Dkt. 689. Following discovery, the Government filed this motion for summary judgment, and Mrs. Romano filed her cross-motion for summary judgment. Dkt. 711-2; Dkt. 716-1. The case was reassigned to the undersigned in August 2025. For the reasons set forth below, both motions are DENIED.

## *BACKGROUND*

### I. *Factual Background*

I assume the parties' familiarity with the facts and procedural history of this case and only address facts relevant to Mrs. Romano's present third-party forfeiture petition.[1]

---

[1] On a motion for summary judgment, the court may consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must construe the evidence in the light most favorable to the party opposing summary judgment and must draw all reasonable inferences in the opposing party's favor. *Granite State Ins. Co. v. Primary Arms, LLC*, 161 F.4th

### A. *Underlying Criminal Conduct*

From January 1990 through November 2008, Romano perpetrated a conspiracy in which he sold coins at inflated prices -- including to many elderly victims -- by falsely representing the coins' value. *See United States v. Romano*, No. 09-cr-168, 2021 WL 1711633, at *1-2 (E.D.N.Y. Apr. 29, 2021); Dkt. 168 ¶ 11. This scheme spanned across three successive companies that he owned. *Romano*, 2021 WL 1711633, at *1-2. Romano moved proceeds of this telemarketing fraud from the company accounts into his own personal accounts. *Id.* at *2.

On November 10, 2010, a grand jury returned a second superseding indictment against Romano, charging him with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A), 1956(h), 1957(b), and 1957(d)(1). Dkt. 168. A criminal forfeiture allegation accompanied each count, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) for the mail and wire fraud conspiracy and under 18 U.S.C. § 982(a)(1) for the money laundering conspiracy. *Id.* After a five-week jury trial in 2011, Romano was convicted of conspiracy to commit mail or wire fraud and of conspiracy to commit money laundering. *See* Dkt. 295.

---

160, 168 (2d Cir. 2025). In the case of cross-motions, as here, "we evaluate each party's motion on its own merits and draw all reasonable inferences against the party whose motion we are considering." *Id.* (citation modified).

As discussed in greater detail below, following his conviction, this Court ordered 8154 Via Bolzano forfeited as a specific asset traceable to Romano's crimes. Dkt. 574.

### B. *The Facts (8154 Via Bolzano)*

Mrs. Romano's petition requests a hearing to adjudicate the validity of her right, title, and interest with respect to 8154 Via Bolzano. The parties present materially different versions of the facts regarding ownership of the property. I first discuss the facts that are undisputed and then discuss the facts that are disputed.

#### i. *The Transaction*

It is undisputed that Mrs. Romano took legal title to 8154 Via Bolzano in 2004.[2] As reflected in the closing statement, the sales price of the property was $457,740. Dkt. 711-3 at 2. Additional closing costs brought the total price of the transaction to $470,392.09. *Id.* Of this price, upgrades (for a pool and balcony) accounted for $109,840, and the down payment was $34,790. *Id.* It is undisputed that Romano paid $144,630 toward the property in 2003 and 2004, *see* Dkt. 716-3 ¶ 5; Dkt. 711-1 at 8, to cover the

[2] Although Mrs. Romano originally asserted in her petition and in a signed declaration that she obtained title to 8154 Via Bolzano on April 16, 2003, *see* Dkt 587 ¶ 1; Dkt. 716-3 ¶ 4, she admits in her reply brief that in fact she did not take title to the property until April 2004. Dkt. 715 ¶ 6. Indeed, documents in the summary judgment record show that (1) Romano did not contract for the purchase of the property on his mother's behalf until April 2003, Dkt. 711-3 at 11; (2) it was not until March 24, 2004 that the purchase contract was amended to include Mrs. Romano as an additional purchaser of the property, *id.* at 10; and (3) the warranty deed transferring title to Mrs. Romano was not executed until April 22, 2004, *id.* at 1.

down payment and upgrades.[3] Moreover, the parties agree that Mrs. Romano took out a mortgage of $175,000 in her name, and that mortgage was eventually paid off. *See* Dkt. 716-3 ¶ 4; Dkt. 587 ¶¶ 1-2; Dkt. 711-1 at 15.

Because the deposit and upgrades had been paid for by the time of closing, and because the mortgage proceeds were applied to the purchase at closing, the buyer owed $150,453.35 on the property, and this amount was paid at the closing. Dkt. 711-3 at 2. The Government does not challenge Mrs. Romano's claim that she has paid all taxes, water bills, homeowners association, maintenance, and upkeep associated with the property. Dkt. 587 ¶¶ 5, 10; Dkt. 716-3 ¶ 16.

Finally, the parties agree that Mrs. Romano conveyed legal title to the property to Romano in 2007. *See* Dkt. 712 ¶¶ 6-7; Dkt. 713 at 2.

**ii. *Remaining Issues of Fact***

The parties submitted conflicting evidence as to material details such as: (1) who paid off the mortgage on 8154 Via Bolzano; (2) who paid the balance of $150,453.35 due at closing; (3) whether Mrs. Romano ever repaid the $144,630 that

---

[3] The documents show that Romano (or one of his companies) paid $144,630 toward the property. Specifically, the documents include: a check showing that Romano paid $34,790 to the order of Villages of Windsor by Ansca Homes on April 26, 2003, *see* Dkt. 711-3 at 11, 13; a check showing that Romano's company, Wall Street Rare Coins, paid $2,000 to the order of Villages of Windsor by Ansca Homes on August 18, 2003, *see id.* at 4; a check showing that Romano paid $27,460 to the order of Villages of Windsor by Ansca Homes on October 13, 2003, *see id.* at 5; and a check showing that Romano paid $80,380 to Villages of Windsor by Ansca Homes on March 13, 2004, *id.* at 3.

Romano contributed; and (4) whether the conveyance of legal title from Mrs. Romano to Romano was conditional.

First, Mrs. Romano claims that she paid off the mortgage on the property by 2007 through retirement accounts, savings, and inheritance from her mother. Dkt. 587 ¶¶ 1-2. Although the Government does not offer any evidence showing that someone else paid off the mortgage, it disputes whether Mrs. Romano paid it off. *See* Dkt. 711-1 at 15 (observing that Mrs. Romano's mother did not die until 2009, after the mortgage was allegedly paid off, and that therefore Mrs. Romano could not have put any inheritance money toward the mortgage payments).

Second, beyond the mortgage, Mrs. Romano asserts that she paid the remainder of the purchase price herself and without help from Romano.[4] The Government contests this claim. In support, it points to the documents discussed above showing that Romano paid $144,630 toward the purchase of the home.[5] But the record

---

[4] Mrs. Romano asserts in her signed declaration that she paid "[t]he remainder of the purchase price [of 8154 Via Bolzano] . . . from [her] savings and from money [she] received from [her] mother." Dkt. 716-3 ¶ 4. She admits that Romano paid $142,000 or $143,000 for certain improvements, *id.* ¶ 5, but she asserts that Romano did not make these payments "until after ownership [of 8154 Via Bolzano] had passed to Mrs. Romano." Dkt. 716-1 at 2; *see also* Dkt. 714 ¶¶ 2-5, 15. Romano also avers in a signed declaration that he paid the $144,630 in renovations only *after* Mrs. Romano took title to the property. Dkt. 716-4 at 1-2. The documents make clear, however, that the payments were made *before* Mrs. Romano took title.

[5] The Government also points out that, according to Mrs. Romano's own petition and contrary to her signed declaration, Romano advanced approximately $144,000 for the property *prior* to the closing. Dkt. 587 ¶ 2.

is unclear as to who paid the balance of $150,762 remaining after the $175,000 in mortgage proceeds and Romano's $144,630 were applied to the total cost of $470,392.

Third, Mrs. Romano claims that she repaid Romano the $144,630 no later than 2007 and that she has written records of her repayments. Dkt. 716-3 ¶ 8; Dkt. 587 ¶ 2. Romano agreed in a signed declaration that Mrs. Romano "paid [him] back in full." Dkt. 716-4 at 2. Mrs. Romano has not, however, produced the written records showing she repaid Romano. Based on this lack of documentation, the Government disagrees that Mrs. Romano has repaid the $144,630. Dkt. 713 at 6.

Finally, Mrs. Romano asserts that the transfer of legal title to Romano was conditioned on a promise of reconveyance, through which she retained her legal interest in the property via a constructive trust. Dkt. 587 ¶¶ 9-10; Dkt. 716-3 ¶ 15. Specifically, Mrs. Romano claims that Romano "understood at the time of transfer that [she] reserved the right to ask for the propert[y] back if [she] needed [it]." Dkt. 587 ¶¶ 6-9; *see also* Dkt. 716-3 ¶¶ 13-15. She notes that Romano made this promise "before a deed was prepared" and that she accordingly relied on the promise in conveying the property. Dkt. 718 ¶ 2.[6] The Government contests whether Romano made any such

[6] Mrs. Romano's attorney at the time, Domenick Pelle, also submitted a signed declaration saying that Mrs. Romano conveyed legal title to Romano in 2007 "based on . . . a promise to reconvey by her son[]." Dkt. 716-6 at 1. Additionally, Mrs. Romano's daughter Celia Wells submitted a signed declaration affirming that she was present at the conveyance in 2007 and that, at that time, Romano understood that Mrs. Romano had the right to request return of the property. Dkt. 716-5 at 1.

promise, at least before title was transferred to him. It points to a signed declaration from Romano, dated March 3, 2025, in which Romano claimed he was not even aware of the deed transfer "*until after the fact*." Dkt. 716-4 at 3 (emphasis added). The declaration also noted: "My mother has previously said that her children (which included me) were present for the discussion she had with Mr. Pelle, but I was not present for the transfer." Dkt. 716-4 at 3.[7]

## II. *Prior Forfeiture Proceedings*

After Romano's conviction and before his sentencing, the Government sought forfeiture of $32,220,617 -- claiming it represented the gross proceeds of the scheme -- as well as properties including 8154 Via Bolzano. *See* Dkt. 373 at 1, 12. Romano waived his right to a jury determination on the forfeiture issues and consented to have the Court determine those issues. *See* Dkt. 348 at 2; Dkt. 556 at 3. On July 26, 2013, the Honorable Vera M. Scanlon, United States Magistrate Judge, issued a report recommending that the district court grant the Government's requests for forfeiture ("R&R"). Dkt. 373 at 48. Specifically, Judge Scanlon recommended that, *inter alia*, Romano forfeit 8154 Via Bolzano, finding by a preponderance of the evidence that the

---

[7] The Government further notes that, at one point in the litigation, Romano asserted that Mrs. Romano "deeded the Via Bolzano property to [him] as a gift." Dkt. 375 at 2-3. Mrs. Romano, for her part, argues that a second signed declaration submitted by Romano, dated April 1, 2025, clarifies that: "I learned that [Mrs. Romano] was deeding the property to me subject to the right to take it back after her decision to do so. However, it was before she signed and conveyed the deed to me. It is correct that when she told me, I agreed with her that I understood that she retained the right to take it back." Dkt. 715-1 at 1.

property constituted a specific asset traceable to the commission of his crimes. *Id.* at 12, 44, 48.

In finding 8154 Via Bolzano forfeitable, Judge Scanlon relied on a sworn declaration from William Hessle, a United States Department of Justice investigator and a former Postal Inspector with the United States Postal Inspection Service. *Id.* at 41. In his declaration, Mr. Hessle stated that Romano transferred $144,630 in traceable proceeds from his three companies to personal bank accounts, which he then used to purchase 8154 Via Bolzano. *Id.*

On February 27, 2014, the district court adopted Judge Scanlon's R&R in full, ordering Romano to forfeit 8154 Via Bolzano and ordering Romano and his co-conspirator William Kearney, jointly and severally, to forfeit $32,220,617. *Romano*, 2021 WL 1711633, at *1. On March 21, 2014, the district court sentenced Romano and signed the forfeiture order. *See* Dkt. 402.

Romano appealed the judgment to the Second Circuit, which then affirmed the conviction and sentence but vacated the forfeiture order. *United States v. Romano*, 794 F.3d 317, 341 (2d Cir. 2015). The Second Circuit concluded that the district court had not reviewed Judge Scanlon's restitution and forfeiture recommendations *de novo*, as required when a defendant timely objects to any portion of a magistrate judge's R&R (which Romano did). *Id*. Accordingly, the Second Circuit remanded for the district court to review the R&R *de novo*, including Romano's challenge to the 8154 Via

Bolzano order. *Id*. On April 29, 2021, the district court (Irizarry, *J*.) conducted a *de novo* review of the R&R, finding it "thorough and well-reasoned." *Romano*, 2021 WL 1711633, at *8. The district court adopted the R&R in its entirety, ordering forfeiture in the amount of $32,220,617 and forfeiture as to 8154 Via Bolzano. *Id.* Accordingly, on May 27, 2021, the district court entered a Preliminary Order of Forfeiture against Romano, again ordering the forfeiture of 8154 Via Bolzano. Dkt. 574.

On July 28, 2021, Mrs. Romano filed a third-party petition for a hearing to adjudicate the validity of her claim to 8154 Via Bolzano. Dkt. 587.[8] On February 2, 2022, the district court denied Mrs. Romano's request for a hearing to adjudicate her claim and granted the Government's motion to dismiss her petition, concluding that (1) Mrs. Romano lacked standing to bring the petition because she had not articulated a sufficient interest in 8154 Via Bolzano, and (2) she had not established an interest in the property superior to that of the Government. *Romano*, 2022 WL 307792, at *1, *4-5. On February 18, 2022, the district court entered a Final Order of Forfeiture as to Romano, ordering the forfeiture of 8154 Via Bolzano. Dkt. 623.

Mrs. Romano appealed from the dismissal of her third-party petition, and the Second Circuit affirmed this Court's adoption of the R&R except that it vacated and remanded as to Mrs. Romano's petition. *Mosca*, 2023 WL 6799293, at *3. The Second

---

[8] Mrs. Romano had previously filed a premature third-party petition for a hearing to adjudicate the validity of her claim to 8154 Via Bolzano on April 22, 2014. *See* Dkt. 410.

Circuit held that, "[a]ccepting Jeanne Romano's petition as true, as we must, [Mrs. Romano] plausibly stated the terms of a constructive trust under Florida law, including that it would be 'against equity' for Michael Romano to retain possession of the property to satisfy part of his forfeiture." *Id.* (quoting S*ilva v. de la Noval*, 307 So. 3d 131, 134 (Fla. Dist. Ct. App. 2020)). The Second Circuit further held that Mrs. Romano had plausibly pleaded that she had a "superior interest" in 8154 Via Bolzano. *Id.* The Second Circuit thus instructed the district court to determine, on remand, whether Mrs. Romano has standing to pursue her petition and, if she does, what interest Romano had in 8154 Via Bolzano under Florida law. *Id.* Mrs. Romano's petition was thus reinstated.

### III. *The Instant Motions*

Discovery proceeded as to Mrs. Romano's forfeiture claim. After the completion of discovery, on or about March 14, 2025, the Government filed its motion for summary judgment to dismiss Mrs. Romano's third-party petition, contending that Mrs. Romano should lose on both statutory standing grounds and the merits of her claim. Dkt. 711-1. On April 4, 2025, Mrs. Romano filed her cross-motion for summary judgment in support of her petition. Dkt. 716-1.

## *DISCUSSION*

I first review the standard applicable to summary judgment motions, then discuss the applicable law as to both statutory standing and the merits, and finally evaluate the cross-motions for summary judgment.

## I. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment as to third-party forfeiture petitions. *See* Fed. R. Crim. P. 32.2(c). Under Rule 56, the court must construe the evidence in the light most favorable to the party opposing summary judgment and must draw all reasonable inferences in the opposing party's favor. *Granite State Ins. Co. v. Primary Arms, LLC*, 161 F.4th 160, 168 (2d Cir. 2025). When considering cross-motions, as here, "we evaluate each party's motion on its own merits and draw all reasonable inferences against the party whose motion we are considering." *Id.* (citation modified). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moving parties are responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In applying [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses. . . . However, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## II. *Applicable Law*

I first provide an overview of criminal forfeiture proceedings under 21 U.S.C. § 853. As explained, to succeed on a § 853 petition, a petitioner must both (1) demonstrate statutory standing by asserting a legal interest in the contested property and (2) prevail on the merits of her claim by proving by a preponderance of the evidence that she has a superior legal interest in the property. I therefore also provide the relevant law on statutory standing in this case (and specifically, what is required to assert a constructive trust under Florida state law) and the law on superior interests.

### A. *Overview of Criminal Forfeiture Proceedings Under 21 U.S.C. § 853*

Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853 govern this criminal forfeiture proceeding.

Following a conviction, the district court must determine what property is subject to forfeiture and must enter a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(1)-(2). Under § 853, property is subject to criminal forfeiture if, *inter alia*, (1) it "constitute[s], or [is] derived from, any proceeds the person obtained, directly or indirectly, as the result of" the criminal act; or (2) it is "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a).

The court enters the preliminary forfeiture order "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A). Following the

entry of the preliminary order, a third party may attempt to establish her legal right, title, or interest in the forfeited property by petitioning the court for a hearing to adjudicate the validity of that interest. 21 U.S.C. § 853(n). This ancillary proceeding provides the "exclusive means" for third parties to claim forfeited assets. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007).

Under § 853(n), a court must first determine that a claimant has statutory standing to pursue her petition. The provision containing the standing requirement states: "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2); *see also United States v. Ribadeneira*, 105 F.3d 833, 834-35 (2d Cir. 1997) (per curiam); *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). If the petitioner fails to assert a valid interest in the property under state law, "the inquiry ends, and the claim fails for lack of standing." *Watts*, 786 F.3d at 161 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)).

Then, if a claimant has statutory standing, she must prove her entitlement to relief on the merits by establishing, through a preponderance of the evidence, that either (1) the claimant's "legal right, title, or interest in the property . . . was vested in [her] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of

the property," 21 U.S.C. § 853(n)(6)(A); or (2) the claimant is a bona fide purchaser of the property "without cause to believe that the property was subject to forfeiture," *id.* § 853(n)(6)(B). *See Watts*, 786 F.3d at 160. "Beyond those two limited claims, the provision authorizes no challenges to the forfeitability of a defendant's property by interested third parties." *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 513 (2d Cir. 2023) (citation modified).

Mrs. Romano claims that she is entitled to relief under the first of these options, § 853(n)(6)(A). Dkt. 716-1 at 10, 13. Mrs. Romano does not contend that she is entitled to relief under the second option, § 853(n)(6)(B). *Id.* at 7 n.3. Thus, to ultimately succeed on the merits, Mrs. Romano must prove by a preponderance of the evidence that (1) she has a "legal right, title, or interest in the property" and (2) this legal right or interest "was vested in [her] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of" Romano's crimes. 21 U.S.C. § 853(n)(6)(A).

If a petitioner meets her burden of proving her entitlement to relief on the merits, the court must amend the forfeiture order to exempt the third-party interest. *Id.* § 853(n)(6). At the conclusion of the ancillary proceeding, the court enters a final order of forfeiture, which is final with respect to all third parties. Fed. R. Crim. P. 32.2(c)(2). The court may rule on a third-party petition without conducting a hearing by permitting the parties to move for summary judgment under Federal Rule of Civil Procedure 56. *Id.* 32.2(c)(1)(B); *United States v. Meiri*, No. 15 Cr. 627 (ER), 2021 WL

5494771, at *3 (S.D.N.Y. Nov. 23, 2021); *United States v. King*, No. 10 Cr. 122(JGK), 2012 WL 2261117, at *5 (S.D.N.Y. June 18, 2012).

**B. *Statutory Standing: Constructive Trust Under Florida Law***

Although federal law determines whether a petitioner has a *superior* interest in property under § 853(n)(6)(A), state law determines whether the petitioner has a legal interest in the property in the first place. *Watts*, 786 F.3d at 161. Mrs. Romano contends that she has a legal interest in 8154 Via Bolzano pursuant to a constructive trust, and the Second Circuit has recognized that a constructive trust validly created under state law constitutes a cognizable legal interest in property for § 853(n) purposes. *See Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). Thus, if Mrs. Romano sufficiently asserts the elements of a constructive trust, she has statutory standing.

Here, as the Second Circuit noted on appeal, we must apply Florida state law to Mrs. Romano's constructive trust claim because 8154 Via Bolzano is located in Florida. *See Mosca*, 2023 WL 6799293, at *2; *In re Flanagan*, 503 F.3d 171, 181 (2d Cir. 2007) ("[W]hether the imposition of a constructive trust is appropriate in a particular set of circumstances is governed . . . by state law."). The parties do not dispute the choice-of-law question, and, as the Government notes, "[t]he elements of a constructive trust in New York State and Florida . . . are similar." Dkt. 717 at 3 n.2; *see also* Dkt. 716-1 at 12 (citing Florida law to support constructive trust argument).

Under Florida law, "[a] constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Quinn v. Phipps*, 113 So. 419, 422 (Fla. 1927); *see also Castetter v. Henderson*, 113 So. 3d 153, 154-55 (Fla. Dist. Ct. App. 2013). Thus, a court must determine as a threshold matter whether imposing a constructive trust in a particular case is appropriate "to do equity," *Castetter*, 113 So. 3d at 154-55, or "to do justice." *Lee v. Wiand*, 603 B.R. 161, 175 (M.D. Fla. 2018).[9] Accordingly, Florida courts generally impose a constructive trust when property is acquired by fraud or "where . . . it is against equity that it should be retained by him who holds it." *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. Dist. Ct. App. 1996) (quoting *Phipps*, 113 So. at 422). Acquisition of property may be against equity where, for example, "one through actual fraud, abuse of confidence reposed or accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold." *Am. Nat'l*

---

[9] Contrary to Mrs. Romano's repeated suggestions, *private parties* cannot impose constructive trusts on themselves. In her motion for summary judgment, for example, Mrs. Romano alleges that her estate-planning lawyer, Pelle, told her that "if she conveyed title to a property to her son, with the promise by the son that the property be reconveyed to her without consideration when she demanded it, that the Courts of New York would enforce that promise." Dkt. 716-1 at 4. This arrangement, Pelle allegedly claimed, constitutes a constructive trust. *Id.* But both Florida state and New York federal courts have explained that a constructive trust is merely a remedy. *See Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. Dist. Ct. App. 1996); *see also, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) ("A constructive trust is a remedy, not a cause of action, and is to be imposed only in the absence of an adequate remedy at law." (citation modified)). Therefore, while *courts* may establish a constructive trust, *private parties themselves* cannot create constructive trusts.

*Bank of Jack. v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1541 (11th Cir. 1983) (quoting *Turturro v. Schmier*, 374 So. 2d 71, 73-74 (Fla. Dist. Ct. App. 1979) (per curiam)).

If this threshold standard is met, "[t]o impose a constructive trust," the court must find clear and convincing evidence of "[1] an express or implied promise, [2] a transfer of the property in reliance thereon, [3] a confidential relationship, and [4] unjust enrichment." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1161 (Fed. Cir. 1998) (citing *Abreu v. Amaro*, 534 So. 2d 771, 772 (Fla. Dist. Ct. App. 1988) (per curiam)); *see also Provence*, 676 So. 2d at 1025; *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. Dist. Ct. App. 2000). As to the promise element, under Florida law, "a constructive trust can arise where a conveyance is induced on the agreement of a fiduciary or confidant to hold property in trust for a reconveyance . . . where the fiduciary or confidential relationship is one upon which there is justifiable and actual reliance and where the agreement is breached." *In re Woolum*, 279 B.R. 865, 870 (M.D. Fla. 2002). Such a promise, however, "does not give rise to a constructive trust" if the promise is oral and is "made after the acquisition of title to the property" -- in other words, if it is made after the "time of the conveyance." *Crockett v. Crockett*, 145 Fla. 311, 313 (Fla. 1940) (per curiam); *see also In re Woolum*, 279 B.R. at 870.

Finally, even if the threshold requirement and four elements are met, the remedy of a constructive trust does not apply if "there is an adequate remedy at law." *Bender v. CenTrust Mortg. Co.*, 51 F.3d 1027, 1030 (11th Cir. 1995).

### C. *Superior Interest*

As explained above, to prevail on the merits under § 853(n)(6)(A), a petitioner must show by a preponderance of the evidence (1) that she has a legal interest in the disputed property (2) that was either (a) vested in her rather than in the defendant or (b) superior to any right, title, or interest of the defendant. *Watts*, 786 F.3d at 166. Courts must evaluate whether the petitioner's interest fulfills one of these two possibilities "*at the time of the commission of the acts* which gave rise to the forfeiture of the property" because § 853(n)(6)(A) "works hand in hand with the 'relation-back' doctrine" in § 853(c). *Id.* (citation modified). The relation-back doctrine provides that all right, title, and interest in property subject to criminal forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). Thus, the Government's interest in forfeitable property vests when the defendant begins conducting the illegal conduct. *Watts*, 786 F.3d at 166; *Swartz Fam. Tr.*, 67 F.4th at 517.

Accordingly, the Second Circuit has explained that a third party may succeed under § 853(n)(6)(A) "only by establishing that he 'had a legal interest in the forfeited property *before* the underlying crime was committed' -- that is, 'before the government's interest vested.'" *Watts*, 786 F.3d at 166 (quoting *Timley*, 507 F.3d at 1130); *see also Swartz Fam. Tr.*, 67 F.4th at 517; *United States v. Madoff*, No. 09 Cr. 213(DC), 2012 WL 1142292, at *4 (S.D.N.Y. 2012). If the petitioner only obtains an interest in the property *after* the commission of the crime, she cannot succeed on her third-party

petition under § 853(n)(6)(A). *See Watts*, 786 F.3d at 166. Consequently, a petitioner is unlikely to succeed under § 853(n)(6)(A) if the forfeited property "consists of 'proceeds' derived from or traceable to a criminal offense." *Id.* After all, these proceeds do not exist before the commission of the offense, and the Government's interest vests immediately upon the commission of the offense. *Id.* at 166-67. Thus, any proceeds from the criminal act "belong to the government from the moment that they come into existence." *Id.*

Partial, rather than full, forfeiture of property is also possible under § 853. *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004) ("[W]e agree with those courts that have suggested that the criminal forfeiture statute, 21 U.S.C. § 853, permits partial forfeitures of real property."); *see also id.* at 349 (explaining that the word "property" in § 853 refers only to "the defendant's interest in [the] land" -- rather than the entire "parcel of land" -- because "a criminal defendant can only be made to forfeit what was his in the first place"); *Mosca*, 2023 WL 6799293, at *2. Thus, a third-party petitioner may have a superior interest in part of a given property, even if not in the entire property subject to forfeiture.

## III. *Application*

Given the statutory framework for 21 U.S.C. § 853 proceedings, I first explain why 8154 Via Bolzano is subject to forfeiture under § 853, contrary to Mrs. Romano's arguments. I next discuss whether Mrs. Romano has statutory standing to

pursue her petition and conclude that, for statutory standing purposes, she has sufficiently asserted a legal interest in 8154 Via Bolzano. Finally, I consider whether either party is entitled to summary judgment on the merits under § 853(n)(6)(A). As explained below, I conclude that genuine issues of material fact preclude granting summary judgment on the merits.

**A. *Subject to Forfeiture***

In her cross-motion for summary judgment, Mrs. Romano raises several arguments as to why 8154 Via Bolzano is not subject to forfeiture under 21 U.S.C. § 853(a). None of these arguments is availing.

As background, § 853 does not allow a third party to relitigate a court's determination that an asset is subject to forfeiture in the first place. *See DSI Assocs. LLC*, 496 F.3d at 185; Fed. R. Crim. P. 32.2 advisory committee's note to 2000 adoption ("[The ancillary] proceeding does not involve relitigation of the forfeitability of property; its only purpose is to determine whether any third party has a legal interest in the forfeited property."); *see also United States v. 101 Houseco, LLC*, 22 F.4th 843, 848-49 (9th Cir. 2022); *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 689-90 (5th Cir. 2013) ("The Second, Eighth, Tenth and Eleventh Circuits have all agreed that a third party has no standing to challenge a preliminary order's finding of forfeitability."); *United States v. Davenport*, 668 F.3d 1316,

1321 (11th Cir. 2012); *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008); *United States v. Andrews*, 530 F.3d 1232, 1236-37 (10th Cir. 2008).

Despite this rule, Mrs. Romano contends first that 8154 Via Bolzano is not subject to forfeiture because the Government has not shown that the money Romano contributed to the property was derived from criminal activity. Dkt. 716-1 at 9-11. *See* 21 U.S.C. § 853(a) (explaining that property is subject to criminal forfeiture if it "constitut[es], or [is] derived from, any proceeds" from the criminal act of conviction). Specifically, Mrs. Romano asserts that the proceeds Romano expended on 8154 Via Bolzano pre-date July 30, 2002 -- the date of enactment of the conspiracy statute under which he was convicted, 18 U.S.C. § 1349 -- and therefore, because his conspiracy was not considered criminal activity before that date, the funds could not have been "unlawfully" derived or obtained. Dkt. 716-1 at 9-11. Mrs. Romano's argument fails.

This Court has already ruled that 8154 Via Bolzano is subject to forfeiture under § 853(a) by adopting in full the R&R, which found that the initial purchase of 8154 Via Bolzano used $144,630 in funds traceable to Romano's criminal conduct. *Romano*, 2021 WL 1711633, at *1; *see* Dkt. 373 at 44.[10] Adopting the views of the Eighth Circuit, Judge Scanlon explained that "[i]f a defendant could not have otherwise bought a property in the absence of the tainted money, or if the purchase would have been

[10] The Final Order of Forfeiture also found that 8154 Via Bolzano was forfeitable. Dkt. 623 at 1-2.

substantially more difficult without the tainted money, then this Court believes that full forfeiture of the property is merited." Dkt. 373 at 43 (citing *United States v. Hawkey*, 148 F.3d 920 (8th Cir. 1998); *United States v. Real Prop. Identified As: Parcel 03179-005R*, 287 F. Supp. 2d 45, 60 (D.D.C. 2003)). The Second Circuit affirmed this Court's adoption of the R&R as to forfeitability. *Mosca*, 2023 WL 6799293, at *1. Furthermore, 18 U.S.C. § 1349 is not the only statute under which Romano was convicted. He was also convicted, *inter alia*, of violating § 1956(a)(1)(A)(i) and § 1957(d)(1), both of which were enacted in their current form in 1986 -- before Romano's crimes began. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207. Individuals convicted under either statute open themselves up to criminal forfeiture. *See* 18 U.S.C. § 982(a)(1). Therefore, even though § 1349 did not exist when Romano began his criminal activity, his conduct was still criminal under other statutes and left him subject to criminal forfeiture proceedings under 21 U.S.C. § 853. Accordingly, I reject Mrs. Romano's first argument.

Second, Mrs. Romano originally contended in her cross-motion for summary judgment -- and in her attached declaration -- that 8154 Via Bolzano is not subject to forfeiture because Romano did not contribute to the purchase price of the property. Dkt. 716-1 at 3, 9; Dkt. 716-3 at 1-3. She initially argued that he did not expend money on the property until 2004, which was after Mrs. Romano purportedly acquired legal title on April 16, 2003. Dkt. 716-1 at 3, 9; Dkt. 716-3 at 1-3. Mrs. Romano conceded in her reply brief, however, that in fact she did not take title to the property

until April 2004, meaning that Romano's pre-April 2004 payments could have contributed to the purchase price. Dkt. 715 ¶ 6. To the extent Mrs. Romano maintains her second argument, it is rejected. Again, when the district court adopted the R&R, it determined that 8154 Via Bolzano was traceable to Romano's commission of mail and wire fraud and that Romano transferred $142,630 from one of his bank accounts for the purchase of the property (plus an additional $2,000 from one of his companies). *Romano*, 2021 WL 1711633, at *1; *see* Dkt. 373 at 41-42. The Second Circuit affirmed the order adopting the R&R except as to the third-party petitions, confirming that 8154 Via Bolzano is subject to forfeiture. *See Mosca*, 2023 WL 6799293, at *1. Moreover, the record unambiguously reflects that Romano made payments toward the property before the time of the closing in April 2004, including on March 13, 2004, August 18, 2003, and October 13, 2003.[11] *See* Dkt. 717-2 at 2, 6, 13-15. Consistent with these records, Mrs. Romano herself asserted in her premature third-party petition in 2014 that her son "assisted [her] with the purchase of the subject property" by "advancing some $143,000

---

[11] Even if the district court's order adopting the R&R had not explained that Romano contributed to the purchase price of the property, and had only contributed toward improvements, 8154 Via Bolzano would still be subject to forfeiture because property may be subject to forfeiture even when fraud proceeds are merely used to pay for expenses or improvements to the forfeited property rather than for the actual purchase. *See United States v. Kenner*, 443 F.Supp.3d 354, 372 (E.D.N.Y. 2020) (holding that property may be subject to forfeiture even when fraud proceeds are merely used to pay for expenses or improvements to the property); *see also United States v. Hawkey*, 148 F.3d 920, 928 (8th Cir. 1998).

. . . prior to the closing." Dkt. 410-1 ¶ 5. Thus, I reject Mrs. Romano's second forfeitability argument.

Third and finally, Mrs. Romano claims that 8154 Via Bolzano is not subject to forfeiture because she fully repaid all the funds Romano advanced for the property. Dkt. 716-1 at 11-12. Even if Mrs. Romano did fully repay those funds, though, this Court has already determined that the property was nevertheless forfeitable because it was traceable to Romano's fraud. *Romano*, 2021 WL 1711633, at *1. Thus, 8154 Via Bolzano is subject to forfeiture under § 853, and Mrs. Romano's arguments to the contrary fail.

**B. *Standing***

Because 8154 Via Bolzano is subject to criminal forfeiture, I move on to the second issue: whether Mrs. Romano has sufficiently demonstrated a legal interest to have statutory standing. Mrs. Romano argues that she possesses a legal interest in 8154 Via Bolzano pursuant to a constructive trust; thus, to have statutory standing, Mrs. Romano must assert the elements of a constructive trust. Namely, as discussed above, Mrs. Romano must demonstrate as a threshold matter that imposing a constructive trust is appropriate "to do equity." *Castetter*, 113 So. 3d at 154-55. She must then assert "[1] an express or implied promise, [2] a transfer of [the] property in reliance thereon, [3] a confidential relationship, and [4] unjust enrichment." *Tronzo*, 156 F.3d at 1161. Even if the four elements of a constructive trust are met, a constructive trust is inappropriate if

"there is an adequate remedy at law." *Bender*, 51 F.3d at 1030. I conclude that Mrs. Romano has asserted the necessary elements and therefore has standing.

As to the threshold question, Mrs. Romano asserts that, because she paid for 8154 Via Bolzano using her own money, "it is manifestly against equity that [she] . . . lose the value of her investment because of her son's misdeeds that had nothing to do with her." Dkt. 712 ¶ 18. As to the first element of a constructive trust, Mrs. Romano asserts that Romano "agreed" *before* she conveyed legal title to him in 2007 "that if [she] ever needed to sell these properties . . . that was a right [she] was reserving to [her]self." Dkt. 716-3 ¶ 13; *see also* Dkt. 716-1 at 4-5. As to the second element, a transfer of property has occurred, as all parties agree that Mrs. Romano transferred legal title of 8154 Via Bolzano to Romano, and Mrs. Romano claims that she relied on Romano's purported promise in transferring title. *See* Dkt. 716-3 ¶¶ 13-14.

As to the third element, a confidential relationship exists between Mrs. Romano and Romano as parent and child. *See Phipps*, 113 So. at 422 (noting that authorities indicate a parent-child relationship constitutes a confidential relationship sufficient to establish a constructive trust); *RRC Aruba, Ltd. v. Lionstone Grp., Inc.*, No. 05-23060-CIV, 2006 WL 8433543, at *5 (S.D. Fla. June 12, 2006) ("A confidential relationship is fiduciary in nature and is established by facts evidencing a relation of trust and confidence from one party to another."). As to the fourth element, Mrs. Romano asserts that allowing Romano -- or, practically speaking, the Government -- to retain possession

of 8154 Via Bolzano would result in unjust enrichment because she has invested a significant sum of her own money into the property. *See Wallace v. Torres-Rodriguez*, 341 So. 3d 374, 384 (Fla. Dist. Ct. App. 2022) ("A constructive trust may be imposed against a recipient of funds who has not engaged in the wrongful conduct that justifies the imposition of the trust." (quoting *Joseph v. Chanin*, 940 So. 2d 483, 487 (Fla. Dist. Ct. App. 2006))). Finally, the Court is unaware of any adequate remedy at law that Mrs. Romano may have to recover 8154 Via Bolzano.

Accordingly, Mrs. Romano has asserted all the elements of a constructive trust and therefore has standing to bring her petition.

## IV. *Superior Interest*

Finally, both the Government and Mrs. Romano move for summary judgment on the merits. I thus assess whether genuine issues of material fact exist as to (1) whether Mrs. Romano has a legal interest or right in 8154 Via Bolzano under Florida state law and (2) whether that interest is superior. *See* 21 U.S.C. § 853(n)(6)(A). I conclude that genuine issues of material fact preclude granting summary judgment to either party.

To determine whether Mrs. Romano currently possesses a superior interest in 8154 Via Bolzano, or in part of it, three questions must be answered. First, did Mrs. Romano have a superior interest in the property, or in part of it, as compared to Romano *before* transferring title to him? Second, regarding Mrs. Romano's interest in

the property now: Do the circumstances of the title transfer give Mrs. Romano a legal right or interest in the property by rendering the creation of a constructive trust over 8154 Via Bolzano appropriate? And third, regarding superior interest now: Does the constructive trust allow Mrs. Romano to maintain her *superior* legal right or interest in 8154 Via Bolzano today? I discuss each of these questions in turn.

**A.** ***Superior Interest Before Transferring Title***

A genuine issue of material fact exists as to whether Mrs. Romano had a superior interest in any portion of 8154 Via Bolzano before transferring title to Romano. On the one hand, Romano paid at least $144,630 toward the purchase of the property (with the proceeds of his crimes), and the Government contends that he paid other amounts as well. On the other hand, Mrs. Romano contends that she had a superior interest in the property because she used her own untainted money to pay for part of the purchase price, to pay off the mortgage and other expenses, and to repay Romano the $144,630 -- all before she transferred title to him in 2007. If in fact she did so, she may indeed have a superior interest in at least a portion of 8154 Via Bolzano.

**B.** ***Constructive Trust at Time of Title Transfer***

Genuine issues of material fact also exist as to whether Mrs. Romano currently has a legal interest or right in 8154 Via Bolzano (putting aside for a moment the question of whether that interest is also "superior"). Thus, neither party is entitled to summary judgment on this question.

#### i. *Threshold Inquiry: Equity*

I cannot fully consider the equities of this case without first resolving remaining factual disputes, discussed in greater detail below. For example, whether a constructive trust aligns with "good conscience" and justice in this case depends on whether and when Romano promised to return 8154 Via Bolzano to Mrs. Romano, and under what circumstances. *Am. Nat'l Bank of Jack.*, 710 F.2d at 1541 (quoting *Turturro*, 374 So. 2d at 73-74). Accordingly, neither party is entitled to summary judgment on this factor.

#### ii. *First Element of a Constructive Trust: Promise*

The first element of a constructive trust under Florida law is "a promise, express or implied." *United States v. Diaz*, No. 17-20631-CR, 2023 WL 7036721, at *4 (S.D. Fla. Oct. 26, 2023) (quoting *Provence*, 676 So. 2d at 1025). An oral promise "made after . . . the conveyance" does not suffice. *Crockett*, 145 Fla. at 313. A genuine dispute of fact exists as to whether a pre-conveyance promise existed between Mrs. Romano and her son.

According to the Government, Mrs. Romano gifted 8154 Via Bolzano to Romano unconditionally, and Romano did not even know of the gift until after the transfer had occurred. Dkt. 711-1 at 2; Dkt. 717 at 4. Thus, says the Government, a pre-transfer promise, as required for a constructive trust, was never made. Dkt. 711-1 at 2; Dkt. 717 at 4. As evidence, the Government points to Romano's March 3, 2025, signed

declaration, in which Romano claims that "my mother deeded the [p]roperty to me. I was unaware that she intended to until after the fact, when she told me that she had deeded the Via Bolzano property to me." Dkt. 716-4 at 3; *see* Dkt. 717 at 4. The Government also relies on Romano's objections to the R&R, in which Romano stated that Mrs. Romano had "deeded the Via Bolzano property to [him] as a gift." Dkt. 375 at 2-3. Thus, under this version of the facts, no express or implied promise of reconveyance existed between Mrs. Romano and her son, and certainly not one sufficient to create a constructive trust.

Mrs. Romano, however, describes a materially different version of the title transfer. On Mrs. Romano's account, Romano only held legal title in 8154 Via Bolzano "subject to [Mrs. Romano] being able to regain title if [or] when she wanted reconveyance." Dkt. 716-1 at 4. According to Mrs. Romano, her son agreed *before* the title transfer that "if [Mrs. Romano] ever needed to sell these properties . . . that was a right [she] was reserving to [her]self." Dkt. 716-3 ¶¶ 12-14.

To the extent Mrs. Romano's son made the promise she asserts he did, that agreement could satisfy the first element of a constructive trust. Factual issues remain, however, as to whether Mrs. Romano and her son actually made this agreement, the scope of the agreement if it was made, and whether the agreement was made before or after Mrs. Romano transferred title to 8154 Via Bolzano to Romano. Resolving these factual issues would be inappropriate at the summary judgment stage, particularly

because resolution would require the Court to evaluate the credibility of witnesses and evidence. *See Proctor v. LeClaire*, 846 F.3d 597, 607-08 (2d Cir. 2017). Thus, I conclude that genuine issues of material fact exist as to the first element of a constructive trust.

### iii. *Remaining Elements of a Constructive Trust*

The remaining elements of a constructive trust are "(2) transfer of the property [in] reliance [on the promise], (3) a confidential relationship[,] and (4) unjust enrichment." *Provence*, 676 So. 2d at 1025.

As to the second element, an issue of fact exists as to whether Mrs. Romano relied on the alleged promise in transferring title to the property -- in part because, as explained above, an issue of fact exists as to whether any promise was made at all and as to whether that promise came before or after the title transfer. While Mrs. Romano declares that she transferred the property to Romano based on his promise to reconvey the property to her should she need it, Dkt. 718 ¶¶ 1-2, the Government argues that Romano's March 3, 2025, declaration -- attesting that the title transfer occurred before he was aware of it -- negates this claim, *see* Dkt. 716-4 at 3.

As to the third element, a confidential relationship exists between Mrs. Romano and her son. *See Phipps*, 113 So. at 422 (explaining that a parent-child relationship constitutes a confidential relationship). As to the fourth element, allowing the Government to retain possession of 8154 Via Bolzano in its entirety may result in unjust enrichment, depending on the resolution of the factual disputes previously

described. If Mrs. Romano indeed transferred legal title to her son subject to reconveyance at her request, her forfeiture of the entire property with no possibility of reconveyance would result in an unjust windfall for the Government. As the Second Circuit held on appeal, under such facts, it may "be against equity for Michael Romano to retain possession of the property to satisfy part of his forfeiture." *Mosca*, 2023 WL 6799293, at *3 (citation modified). Thus, a genuine issue of material fact exists as to this fourth element.

### C. *Superior Interest After Transferring Title*

A constructive trust, if proven, can establish an interest in the property superior to that of the defendant because if "a constructive trust should be recognized, the defendant never truly acquired an interest in the property at issue and only held it as a trustee for the beneficiaries." *Willis Mgmt.*, 652 F.3d at 244; *see also id.* at 245. Thus, if Mrs. Romano is the beneficiary of a constructive trust, her interest in the amount subject to the trust may be superior to Romano's interest -- and, consequently, to the Government's -- despite the fact that Romano now has legal title to the property. Because of the issues of fact regarding the appropriateness of a constructive trust, though, the Court cannot determine as a matter of law what Mrs. Romano's superior interest in 8154 Via Bolzano may be.

* * *

Accordingly, genuine issues of material fact exist as to whether Mrs. Romano has an interest in 8154 Via Bolzano superior to the Government's. A hearing is necessary to determine, *inter alia*, whether Mrs. Romano paid the approximately $150,453 due at closing, paid off the mortgage and covered other expenses, and repaid the $144,630 to Romano.

## *CONCLUSION*

For the foregoing reasons, the Government's motion for summary judgment is **DENIED**, and Mrs. Romano's cross-motion is also **DENIED**. Mrs. Romano's request for a hearing to adjudicate her third-party claim is **GRANTED**. The Court will schedule a conference to discuss further proceedings.

SO ORDERED.

Dated: Brooklyn, New York
September 11, 2026

DENNY CHIN
United States Circuit Judge
Sitting by Designation